**FILED**

Apr 02 2021
3:08 pm

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ dominicf          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

November 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GIOVANNI VINCENZO TILOTTA (3),<br> aka "Gio Tilotta",<br>WAIEL YOUSIF ANTON (5),<br> aka "Will Anton",<br><br>Defendants. | Case No. 19CR4768-GPC<br><br>I N D I C T M E N T<br>**(Superseding)**<br><br>Title 18, U.S.C., Sec. 371 – Conspiracy; Title 18, U.S.C., Secs. 922(a)(1)(A), 923(a) and 924(a)(1)(D) – Engaging in the Business of Dealing in Firearms Without a License; Title 18, U.S.C., Sec. 924(a)(1)(A) – False Statement in the Acquisition of a Firearm; Title 18, U.S.C., Secs. 922(b)(2) and 924(a)(1)(D) – Conducting Firearms Transaction in Violation of State Law; Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 18, U.S.C., Sec. 1512(b)(3) – Attempted Obstruction of Justice; Title 18, U.S.C., Sec. 924(d), and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |

The grand jury charges:

INTRODUCTORY ALLEGATIONS

1.    From at least September 9, 2015 to the present, defendant GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta", held one or more Federal Firearms Licenses ("FFLs") and owned and operated a federally licensed firearms dealer commonly known as "Honey Badger Firearms."

2. Defendant WAIEL YOUSIF ANTON, aka "Will Anton", held himself out as a consultant in various matters concerning state and local government, including as a consultant assisting persons applying to the San Diego County Sheriff's Department ("SDCSD") for concealed weapons permits, commonly known as permits to carry a concealed weapon ("CCW").

3. From October 16, 1992 to September 20, 2019, Morad Marco Garmo was a SDCSD Deputy Sheriff. From January 8, 2016 to February 13, 2019, Garmo was the captain in charge of the Rancho San Diego Station, a SDCSD station covering approximately 150 square miles in San Diego County including Spring Valley, Lemon Grove, Imperial Beach, and unincorporated areas of the County. At no time did Garmo possess the FFL that was required to be lawfully engaged in the business of dealing in firearms.

4. Leo Joseph Hamel owned and operated a series of jewelry stores and related businesses, commonly known as Leo Hamel Fine Jewelers. Hamel held multiple FFLs since January 1992, including one related to his business, Leo Hamel Fine Jewelers.

5. From approximately October 19, 2001 to December 24, 2019, Fred Magana was a Deputy Sheriff at SDCSD. During part of his tenure at SDCSD, Magana served as a Lieutenant and reported directly to Garmo.

## Relevant Firearms Laws

6. California Penal Code Section 32000 prohibited the manufacturing, importing, offering for sale, selling, gifting, or loan of any handgun that was not on the roster of handguns determined to be "not unsafe" within the meaning of California Penal Code Section 32015. More specifically:

a. Pursuant to California Penal Code Section 32015, the California State Department of Justice ("CalDOJ") maintained a roster of handguns that could lawfully be sold in the State of California. The

2

roster was a listing of handguns by manufacturer, model number, and model name that had been tested by a California certified testing laboratory and determined "not to be unsafe." The handguns listed on this roster were the only handguns that could be sold in the State of California, subject to certain exceptions.

      b.   Any handgun not listed on the roster was referred to as "unsafe," "non-roster," or "off roster."

      c.   An "off roster" handgun could only be sold to, or purchased by, certain exempted parties listed in California Penal Code Section 32000. California Penal Code Section 32000(b)(4) permitted sworn members of police departments and other law enforcement or military agencies to purchase "off roster" handguns for use in the performance of their official duties.

      d.   The California Penal Code did not prohibit an exempted person, such as a sworn member of a police department, from re-selling an "off roster" handgun to a non-exempted buyer who was not otherwise prohibited by the applicable laws and regulations.

      7.   California Penal Code Section 27535 provided that "no person shall make an application to purchase more than one handgun within any 30-day period," except for certain parties identified in the statute, including law enforcement agencies and paid peace officers. Pursuant to the exception set forth in California Penal Code Section 27535(b)(5), peace officers could purchase or apply to purchase more than one handgun within a 30-day period.

      8.   California Penal Code Section 26815 generally provided that no firearm could be delivered within ten days of the application to purchase (the "ten-day waiting period"). The ten-day waiting period did not apply to the sale, delivery, or transfer of firearms made to a full-

3

1  time, paid police officer whose employer had authorized the officer to
2  carry firearms while in the performance of the officer's duties.

3      9.    The United States Department of Justice, Bureau of Alcohol,
4  Tobacco, Firearms and Explosives ("ATF") required all federally-licensed
5  firearms dealers to document firearms sales and purchases to non-
6  licensees on an ATF Form 4473, a form that was completed by the federal
7  firearms licensee ("FFL") dealer and the firearm purchaser.    The
8  documentation process included the following requirements:

9          a.    At the time the purchaser submitted an application to
10 purchase a firearm, the purchaser was required to certify on ATF Form
11 4473 that he or she was the "actual transferee/buyer" of the firearm.
12 ATF Form 4473 advised that: "You are not the actual buyer if you are
13 acquiring the firearm(s) on behalf of another person."

14         b.    At the time the purchaser took possession of the firearm,
15 which generally was at the conclusion of the 10-day waiting period in
16 California, the purchaser was required to re-certify on the ATF Form
17 4473 that all of the assertions previously made on the ATF Form 4473
18 during the initial application were true, correct, and complete.

19                    Unlawful Firearms Acquisitions & Transfers

20     10.    From approximately March 2013 until February 13, 2019, M.
21 Marco Garmo engaged in the business of dealing in firearms without a
22 license. Specifically, Garmo acquired approximately 144 firearms in
23 transactions conducted through FFLs and reported to California's
24 Automated Firearms System ("AFS"). During the same time period, Garmo
25 transferred approximately 98 firearms to other people in transactions
26 conducted through FFLs and reported to AFS. As set out in further detail
27 below, Garmo also transferred additional firearms to others (including

28

4

1 Leo Joseph Hamel), sometimes in exchange for cash, without conducting
2 lawful transfers through FFLs.

3      11.   Garmo engaged in the business of dealing in firearms by
4 devoting time, attention, and labor to dealing in firearms as a regular
5 course of trade or business with the principal objective of livelihood
6 and profit through the repetitive purchase and resale of firearms.  One
7 aspect of Garmo's livelihood and profit in dealing in firearms was to
8 make money by reselling firearms at favorable prices or exchanging them
9 for valuable services.  Another aspect was for Garmo to build good will
10 with future potential donors or benefactors who could advance his career
11 or support anticipated political campaigns, including Garmo's expressed
12 intention to run for San Diego County Sheriff, by obtaining firearms for
13 them that they could not directly obtain for themselves.

14      12.   As part of his unlicensed dealing in firearms, Garmo
15 repeatedly purchased firearms, including especially "off roster"
16 handguns, with the intention to resell them to specific individuals:
17 transactions commonly known as "straw purchases."  For example, between
18 December 2014 and May 2018, Garmo falsely certified that he was the
19 actual buyer or transferee of at least nine (9) firearms that he had
20 already agreed to sell to other specific individuals at the time he made
21 those false certifications.

22      13.   In order to conceal his extensive and unlawful engagement in
23 the business of dealing in firearms, Garmo typically conducted the
24 private party transfer of a given firearm at a different FFL from the
25 dealer where he had previously acquired the firearm, except for transfers
26 involving TILOTTA and TILOTTA's FFL, Honey Badger Firearms.

27      14.   In order to conceal and facilitate the straw purchase of off
28 roster handguns for his close associates, Garmo relied in part on

Defendant TILOTTA and TILOTTA's FFL, Honey Badger Firearms. TILOTTA repeatedly facilitated Garmo's straw purchase of firearms for Hamel by knowingly permitting those transactions to be conducted at his FFL, accepting and submitting falsified records as if Garmo were the firearms' true purchaser. Accordingly, Garmo could safely conduct firearms transfers at Honey Badger Firearms without concern that TILOTTA would refuse to process the transactions, because TILOTTA had agreed to assist Garmo with conducting straw transfers.

15. TILOTTA also aided and abetted Garmo's unlicensed firearms dealing by preparing early firearms transfer records. By preparing firearms transfer records ahead of time, without requiring the parties to the transaction to appear in person at his FFL, and instead permitting Garmo and selected associates to backdate those records after the fact, TILOTTA enabled Garmo and others to circumvent the ten-day waiting period prescribed by California law for firearms transfers.

16. Another part of TILOTTA's arrangement with Garmo and Hamel involved creating falsified records to make it appear that Garmo was purchasing firearms on his own behalf, instead of straw purchasing them for Hamel. On June 27, 2016, for example, Hamel emailed Garmo, "Gio [TILOTTA] asks that we do ordered guns [t]his way. You email him first that you want a Sig Legion and a Walther P99cAS. He will then reply ok. You then go in to order. You can do right away." On July 7, 2016, Garmo in fact purchased a Sig Sauer Legion P226 9mm handgun bearing serial number 47A141276 from TILOTTA's FFL, falsely certifying that he was the actual buyer/transferee of the firearm. Although the firearm was never legally transferred from Garmo to Hamel, it was found in Hamel's possession on February 13, 2019.

6

1      17.  As a collateral benefit of purchasing firearms from him, Garmo
2 encouraged his customers to apply for CCWs from SDCSD. For example,
3 Garmo suggested to an ATF undercover agent that the agent apply for a
4 CCW. When the undercover agent asked if Garmo could help the agent
5 avoid the months-long wait for an initial appointment for a CCW, Garmo
6 suggested that his friend (Defendant WAIEL YOUSIF ANTON, aka "Will"
7 ANTON) could help the agent get an earlier appointment in exchange for
8 a cash payment.

9      18.  ANTON aided and abetted Garmo's unlicensed firearms dealing
10 by helping Garmo's firearms customers apply for CCW permits in exchange
11 for cash payments. Specifically, ANTON would use connections at the
12 Sheriff's Licensing Department to secure appointments months earlier
13 than those available to the general public, charging between $1,000 and
14 $2,000 for this service. As part of this scheme, ANTON unlawfully paid
15 a clerk at SDCSD's civilian licensing staff $100 in cash in exchange for
16 making early CCW appointments for his "consulting" clients. When
17 negotiating with the ATF undercover agent referred to him by Garmo, from
18 whom ANTON collected $1,000 for his services, ANTON told the agent that
19 he would pay a referral fee of $100 per customer for any other CCW
20 applicants the agent sent to ANTON. In turn, one of the $100 bills
21 which the agent paid ANTON for securing an early CCW appointment was
22 found in Garmo's wallet eight (8) days later, representing a kickback
23 to Garmo of the "consulting" fee earned by ANTON from the CCW applicant
24 Garmo referred to him.

25      19.  On February 13, 2019, following a search of his residence by
26 federal agents, ANTON telephoned the ATF undercover agent and repeatedly
27 urged him not to tell federal investigators about the $1,000 that he had

28

7

1  paid ANTON.   ANTON repeated this instruction in a separate telephone
2  call on February 14, 2019.

3                              **Count 1**
                              **Conspiracy**
4                          **[18 U.S.C. § 371]**

5       20.   The allegations set forth in paragraphs 1 through 19 above are
6  realleged and incorporated by reference as if fully set forth herein.

7       21.   Beginning no later than October 21, 2015, and continuing until
8  at least February 13, 2019, within the Southern District of California,
9  and elsewhere, defendant GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta,"
10 did knowingly conspire, confederate, and agree with Morad Marco Garmo,
11 Leo Joseph Hamel, and Fred Magana, all charged elsewhere, to commit
12 offenses against the United States in violation of Title 18, United
13 States Code, Section 924(a)(1)(A), to wit: making false statements in
14 the acquisition of a firearm, in violation of Title 18, United States
15 Code, Section 924(a)(1)(A).

16                     **PURPOSE OF THE CONSPIRACY**

17      22.   It was the purpose of the conspiracy for defendant GIOVANNI
18 VINCENZO TILOTTA, aka "Gio Tilotta," and Morad Marco Garmo to enrich
19 themselves and otherwise benefit by TILOTTA's selling firearms to Garmo
20 and Fred Magana that Garmo and Magana intended to transfer to other
21 individuals, including Leo Joseph Hamel, thereby circumventing the
22 California state law prohibition on Hamel initially acquiring such
23 firearms himself, allowing Garmo and Magana to curry favor with the
24 firearms recipients, such as Hamel, and allowing TILOTTA to profit from
25 the sales and by the receipt of other favors from Garmo.

26                        **MANNER AND MEANS**

27      23.   The manner and means used to accomplish the objectives of
28 the conspiracy included the following, among others:

                                  8

a. Defendant GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta," would knowingly and repeatedly process straw purchases for Garmo, knowing full well that Garmo was acquiring desirable "off-roster" handguns, not for himself, but for other individuals who could not initially acquire the handguns themselves under California state law;

b. TILOTTA would knowingly accept falsified paperwork, in which Garmo falsely declared (under penalty of perjury) that he was the actual buyer of the firearms, when (as TILOTTA well knew) Garmo was acquiring the firearms for others who could not initially acquire them themselves;

c. TILOTTA would prepare backdated paperwork for Garmo and some of his customers, allowing them to circumvent the California state law requirement to present themselves in person for identification and to answer a series of written questions under penalty of perjury in order to begin the transfer process and abide by the ten-day waiting period;

d. When Garmo was reprimanded by his superiors at SDCSD and by the San Diego District Attorney's office for excessive firearms sales and transfers, TILOTTA would facilitate further straw transfers to Hamel involving Garmo's immediate subordinate, Magana, to conceal Garmo's role in the sales and transfers;

e. TILOTTA would conduct firearms transfers at locations prohibited by California state law as a convenience to Garmo and his customers, including inside Garmo's Captain's Office at the SDCSD Rancho San Diego station;

f. TILOTTA would provide Garmo with preferential early access to desirable new, off-roster handguns that he and Honey Badger Firearms received from firearms manufacturers; and

9

1    g.    In  exchange  for  TILOTTA's  assistance  in  processing
2 unlawful  firearms  transactions,  Garmo  would  provide  TILOTTA  with
3 valuable services, such as promised assistance with TILOTTA's efforts
4 to provide products and services to the County, introductions to other
5 wealthy  firearms  customers,  and  assistance  with  TILOTTA's  own  CCW
6 application and that of his friend.

7                              **OVERT ACTS**

8       24.   In furtherance of the conspiracy, and to effect its objects,
9 the  following  overt  acts,  among  others,  were  committed  within  the
10 Southern District of California, on or about the dates below:

11       a.    On  or  about  October  21,  2015,  TILOTTA  processed  a
12 firearms transfer in which Garmo acquired an off roster Sig Sauer P320
13 Compact 9mm pistol, bearing serial number 58B024632 from Honey Badger
14 Firearms, in which Garmo falsely certified that Garmo was the actual
15 buyer/transferee when in truth the handgun was intended for Hamel;

16       b.    On June 27, 2016, in order to create falsified records
17 suggesting that Garmo's straw purchases of firearms for Hamel were
18 actually legitimate purchases Garmo was making on Garmo's own behalf,
19 Hamel emailed Garmo, "Gio [TILOTTA] asks that we do ordered guns [t]his
20 way.  You email him first that you want a Sig Legion and a Walther
21 P99cAS.  He will then reply ok.  You then go in to order.  You can do
22 right away";

23       c.    On July 7, 2016, TILOTTA processed a firearms transfer
24 in which Garmo acquired an off roster Sig Sauer Legion P226 9mm handgun
25 bearing serial number 47A141276 from Honey Badger Firearms, in which
26 Garmo falsely certified that Garmo was the actual buyer/transferee when
27 in truth the handgun was intended for Hamel;

28
                                  10

1    d.    Between October 6 and October 8, 2016, TILOTTA collected
2 personal information from Garmo for San Diego attorney V.B., including
3 a copy of V.B.'s driver's license and CCW information, so that TILOTTA
4 could begin the transfer paperwork for a firearms transfer TILOTTA and
5 Garmo planned to conduct with V.B. inside Garmo's office at the Rancho
6 San Diego station; by completing the paperwork early, TILOTTA enabled
7 V.B. to avoid the 10-day waiting period required to acquire a handgun
8 under California law;

9    e.    Between October 5 and October 16, 2016, Garmo texted
10 TILOTTA to suggest that TILOTTA bring a sling mount, a foregrip, a sling,
11 a Smith & Wesson Shield pistol, a Red Dot sight, a light and Talon grips
12 to the October 28, 2016 meeting with V.B. so that TILOTTA could sell
13 those items to V.B. as well as the firearms Garmo and TILOTTA had already
14 discussed;

15    f.    On October 28, 2016, TILOTTA and Garmo sold a variety of
16 firearms and firearm accessories to V.B. inside Garmo's office at the
17 SDCSD Rancho San Diego station, including (1) an off roster Glock 27 .40
18 caliber pistol bearing serial number RLK240 for $1,200; (2) a Daniel
19 Defense AR-15 style rifle bearing serial number DDM4107377; and (3) a
20 Smith & Wesson Shield handgun bearing serial number HNH6175; as described
21 above, TILOTTA had facilitated the Daniel Defense and Shield
22 transactions by preparing advance paperwork for V.B.'s firearms
23 transactions, which was backdated as if the records had first been
24 executed on October 8, 2016;

25    g.    On April 24, 2017, Honey Badger Firearms processed a
26 firearms transfer in which Magana acquired two off roster Walther
27 handguns (a Walther PPS M2 9mm pistol, bearing serial number AR5980, and
28 a Walther PPQ M2 9mm pistol, bearing serial number FCH4067) from Honey

11

Badger Firearms, in which Magana falsely certified that Magana was the actual buyer/transferee of both handguns when in truth both handguns were intended for Hamel; in fact, Hamel paid TILOTTA for both firearms and they were never turned over to Magana;

      h.   On May 3, 2017, TILOTTA processed a firearms transfer in which Garmo transferred an off roster CZ 75D 9mm pistol (serial no. C08233) to V.B. which Garmo had acquired in a straw purchase for V.B. on November 30, 2016 at a different firearms dealer;

      i.   On September 15, 2017, TILOTTA processed a firearms transfer in which Hamel acquired the two Walther handguns listed above at paragraph 25.g. that Magana had "acquired" in a straw purchase on April 24, 2017; although the transfer records reflected that Hamel was acquiring the Walther handguns from Magana, in truth the handguns had never been turned over to Magana and Hamel was simply "acquiring" them from TILOTTA and Honey Badger Firearms;

      j.   On September 21, 2017, TILOTTA texted Garmo that "Me and [Associate 1] are doing our 2nd interview for our ccw"; Garmo replied "Fuk yeah [sic] throw my name down!"; TILOTTA wrote, "Aaaa I don't do that. But . . . if yiu [sic] know someone that reviews our files . . . [lol]"; Garmo replied "U got it";

      k.   On May 16, 2018, Garmo texted an associate then employed by San Diego County (Individual 5) reminding Individual 5 to call TILOTTA and assist TILOTTA with his pursuit of a contract to supply bulletproof vests to SDCSD;

      l.   On October 8, 2018, TILOTTA emailed Garmo to alert Garmo that he had received an off roster Sig Sauer P365 handgun in stock, because Garmo had "said one of [his] people needed one." TILOTTA asked Garmo to "[l]et [him] know because we are going to start calling on our

1  [wait] list." Garmo replied "Save me one!" and asked TILOTTA to save
2  another Sig Sauer P365 for a different SDCSD officer. TILOTTA also
3  agreed by email to start the transfer paperwork early for Garmo's
4  acquisition of the Sig Sauer P365; and

5      m.  On or about October 9, 2018, TILOTTA began to process
6  unlawful early paperwork for the transfer of an off roster Sig Sauer
7  P365 handgun to Garmo even though Garmo did not present himself in person
8  to begin the transfer or commence the waiting period.

9  All in violation of Title 18, United States Code, Section 371.

10
                                **Count 2**
                        **Engaging in the Business Of**
11              **Dealing in Firearms Without A License**
                            **Aiding & Abetting**
12       **[18 U.S.C. §§ 922(a)(1)(A) 923(a), 924(a)(1)(D) & 2]**

13      25.  The allegations set forth in paragraphs 1 through 24 above are
14  realleged and incorporated by reference as if fully set forth herein.

15      26.  Beginning no later than October 21, 2015 and continuing until
16  at least February 13, 2019, within the Southern District of California,
17  and elsewhere, defendants GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta,"
18  and WAIEL YOUSIF ANTON, aka "Will Anton" knowingly aided and abetted
19  Morad Marco Garmo, charged elsewhere, who was not licensed as an
20  importer, manufacturer, or dealer of firearms, and who was willfully
21  engaged in the business of dealing in firearms.

22  All in violation of Title 18, United States Code, Sections 922(a)(1)(A),
23  923(a), 924(a)(1)(D), and 2.

24
                                **Count 3**
              **False Statement in the Acquisition of a Firearm**
25                          **Aiding & Abetting**
                      **[18 U.S.C. §§ 924(a)(1)(A) & 2]**
26

27      27.  The allegations set forth in paragraphs 1 through 26 above are
28  realleged and incorporated by reference as if fully set forth herein.

13

1      28.   On or about October 21, 2015, within the Southern District of
2  California, defendant GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta,"
3  aided and abetted Morad Marco Garmo and Leo Joseph Hamel, both charged
4  elsewhere, in making and causing to be made a false statement and
5  representation to Honey Badger Firearms in San Diego, California, a
6  person licensed under the provisions of Title 18, United States Code,
7  Chapter 44, with respect to information required by the provisions of
8  Chapter 44 of Title 18, United States Code, to be kept in the records
9  of Honey Badger Firearms, in that TILOTTA accepted a United States
10 Department of Justice, Bureau of Alcohol, Tobacco, Firearms and
11 Explosives Form 4473 Firearms Transaction Record, stating that Garmo was
12 the actual buyer of a Sig Sauer P320 Compact 9mm pistol, bearing serial
13 number 58B024632, when, in truth and in fact, as defendant TILOTTA then
14 well knew, Garmo was not the actual buyer of the firearm, in that he was
15 acquiring the firearm on behalf of Hamel.

16 All in violation of Title 18, United States Code, Sections 924(a)(1)(A)
17 and 2.

**Count 4**
**False Statement in the Acquisition of a Firearm**
**Aiding & Abetting**
**[18 U.S.C. §§ 924(a)(1)(A) & 2]**

20      29.   The allegations set forth in paragraphs 1 through 28 above are
21 realleged and incorporated by reference as if fully set forth herein.

22      30.   On or about July 7, 2016, within the Southern District of
23 California, defendant GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta,"
24 aided and abetted Morad Marco Garmo and Leo Joseph Hamel, both charged
25 elsewhere, in making and causing to be made a false statement and
26 representation to Honey Badger Firearms in San Diego, California, a
27 person licensed under the provisions of Title 18, United States Code,
28 Chapter 44, with respect to information required by the provisions of

14

1 | Chapter 44 of Title 18, United States Code, to be kept in the records
2 | of Honey Badger Firearms, in that TILOTTA accepted a United States
3 | Department of Justice, Bureau of Alcohol, Tobacco, Firearms and
4 | Explosives Form 4473 Firearms Transaction Record, stating that Garmo was
5 | the actual buyer of a Sig Sauer P226 Legion 9mm pistol, bearing serial
6 | number 47A141276, when, in truth and in fact, as defendant TILOTTA then
7 | well knew, Garmo was not the actual buyer of the firearm, in that he was
8 | acquiring the firearm on behalf of Hamel.

9 | All in violation of Title 18, United States Code, Sections 924(a)(1)(A)
10 | and 2.

## Count 5
### False Statement in the Acquisition of a Firearm
### Aiding & Abetting
### [18 U.S.C. §§ 924(a)(1)(A) & 2]

31. The allegations set forth in paragraphs 1 through 30 above are realleged and incorporated by reference as if fully set forth herein.

32. On or about April 24, 2017, within the Southern District of California, defendant GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta," aided and abetted Fred Magana and Leo Joseph Hamel, both charged elsewhere, in making and causing to be made a false statement and representation to Honey Badger Firearms in San Diego, California, a person licensed under the provisions of Title 18, United States Code, Chapter 44, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Honey Badger Firearms, in that TILOTTA accepted a United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 Firearms Transaction Record, stating that Magana was the actual buyer of a Walther PPS M2 9mm pistol, bearing serial number AR5980, when, in truth and in fact, as defendant TILOTTA then

15

1 well knew, Magana was not the actual buyer of the firearm, in that he
2 was acquiring the firearm on behalf of Hamel.

3 All in violation of Title 18, United States Code, Sections 924(a)(1)(A)
4 and 2.

### Count 6
### False Statement in the Acquisition of a Firearm
### Aiding & Abetting
### [18 U.S.C. §§ 924(a)(1)(A) & 2]

33. The allegations set forth in paragraphs 1 through 32 above are reralleged and incorporated by reference as if fully set forth herein.

34. On or about April 24, 2017, within the Southern District of California, defendant GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta," aided and abetted Fred Magana and Leo Joseph Hamel, both charged elsewhere, in making and causing to be made a false statement and representation to Honey Badger Firearms in San Diego, California, a person licensed under the provisions of Title 18, United States Code, Chapter 44, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Honey Badger Firearms, in that TILOTTA accepted a United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 Firearms Transaction Record, stating that Magana was the actual buyer of a Walther PPQ M2 9mm pistol, bearing serial number FCH4067, when, in truth and in fact, as defendant TILOTTA then well knew, Magana was not the actual buyer of the firearm, in that he was acquiring the firearm on behalf of Hamel.

All in violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

1

2

3

## Count 7
### Conducting Firearms Transaction in Violation of State Law
### Aiding & Abetting
### [18 U.S.C. §§ 922(b)(2) & 924(a)(1)(D) & 2]

4    35.   The allegations set forth in paragraphs 1 through 34 above are

5    realleged and incorporated by reference as if fully set forth herein.

6    36.   On or about October 28, 2016, within the Southern District of

7    California, defendant GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta", a

8    person licensed under the provisions of Title 18, United States Code,

9    Chapter 44, did willfully sell, deliver and transfer three firearms, and

10   did willfully aid and abet the sale, delivery and transfer of three

11   firearms, that is, a Daniel Defense AR-15 style 5.56mm rifle bearing

12   serial number DDM4107377, a Smith & Wesson Shield 9mm handgun bearing

13   serial number HNH6175, and a Glock 27 .40 caliber pistol bearing serial

14   number RLK240, to V.B., at the Rancho San Diego Substation of the San

15   Diego County Sheriff's Department, a location prohibited by California

16   Penal Code Section 26805(d).

17   All in violation of Title 18, United States Code, Sections 922(b)(2),

18   924(a)(1)(D), and 2.

19

20

## Count 8
### Attempted Obstruction of Justice
### [18 U.S.C. § 1512(b)(3)]

21   37.   The allegations set forth in paragraphs 1 through 36 above are

22   realleged and incorporated by reference as if fully set forth herein.

23   38.   On or about February 13, 2019, in the Southern District of

24   California, defendant WAIEL YOUSIF ANTON, aka "Will" ANTON, did

25   knowingly attempt to corruptly persuade and to bribe an undercover agent

26   of the Bureau of Alcohol, Tobacco, Firearms and Explosives by repeatedly

27   directing the undercover agent not to tell federal investigators that

28   he had paid ANTON $1,000 for his supposed "consulting" services and to

17

1  instead falsely tell investigators that ANTON was helping the undercover
2  agent because they were friends, and by promising to refund the
3  undercover agent's money and continue to provide free services, all with
4  the intent to hinder, delay and prevent the communication to agents of
5  the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco,
6  Firearms and Explosives of information relating to the commission and
7  possible commission of a federal offense, specifically aiding and
8  abetting the unlicensed dealing of firearms, in violation of Title 18,
9  United States Code, Section 922(a)(1)(A), and federal program bribery,
10 in violation of Title 18, United States Code, Section 666.
11 All in violation of Title 18, United States Code, Section 1512(b)(3).
12                        FORFEITURE ALLEGATIONS

13     39.  The allegations set forth above in Counts 1 through 7 are
14 realleged and incorporated herein for the purpose of alleging forfeiture
15 to the United States of America under Title 18, United States Code,
16 Section 924(d) and Title 28, United States Code, Section 2461(c).

17     40.  Upon conviction of the one or more of the offenses set forth
18 in Counts 1 through 7 above, and pursuant to Title 18, United States
19 Code, Section 924(d) and Title 28, United States Code, Section 2461(c),
20 defendants GIOVANNI VINCENZO TILOTTA, aka "Gio Tilotta," and WAIEL
21 YOUSIF ANTON, aka "Will Anton", shall forfeit to the United States all
22 rights, title and interest in all firearms and ammunition involved in
23 the offenses.

24 //
25 //
26 //
27 //
28 //

                                18

1    41.  If any of the above-described forfeitable property, as a
2  result of any act or omission of the defendants —

3              a.    cannot be located upon the exercise of due diligence;
4              b.    has been transferred or sold to, or deposited with, a
5                    third party;
6              c.    has been placed beyond the jurisdiction of the Court;
7              d.    has been substantially diminished in value; or
8              e.    has been commingled with other property which cannot be
9                    subdivided without difficulty;
10  it is the intent of the United States, pursuant to Title 28, United
11  States Code, Section 2461(c), to seek forfeiture of any other property
12  of the defendants up to the value of the property listed above as being
13  subject to forfeiture.
14  All pursuant to Title 18, United States Code, Section 924(d), and
15  Title 28, United States Code, Section 2461(c).
16         DATED:  April 2, 2021.
17
18
19
20  LINDA FRAKES
    Attorney for the United States
21  Acting Under Authority
    Conferred by 28 U.S.C. § 515
22
23  By:
       NICHOLAS W. PILCHAK
24     ANDREW R. HADEN
       Assistant U.S. Attorneys
25
26
27
28
                                  19