Jeremy Warren
WARREN & BURSTEIN
State Bar No. 177900
501 West Broadway, Suite 240
(619) 234-4433
jw@wabulaw.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,          ) | Case No.:   19cr4768-GPC |
| ) | |
| Plaintiff,      ) | Mr. Tilotta's response in opposition to |
| ) | government's motions in limine (docket |
| v.          ) | no. 224) |
| ) | |
| GIOVANNI TILOTTA,          ) | |
| ) | |
| Defendant.      ) | |
| _____ ) | |

## Introduction

Mr. Tilotta submits the following response to the government's motions in limine, addressing the motions in order.

**1.   Co-conspirator statements.**

Mr. Tilotta does not dispute the principle embodied in the co-conspirator rule: a statement "made by the party's coconspirator" is admissible as non-hearsay if it was made "during and in furtherance of the conspiracy."  FRE 801(d)(2)(E).

Here, however, the government provides only a single example of the "many statements" of Mr. Tilotta, Mr. Anton, and the former co-defendants which "were captured on recordings, in emails or text messages, or will otherwise be introduced

at trial." Govt. Motion at 4. The government's lone example is not even a particular statement, but rather a category: "Garmo's statements to Hamel and Magna coordinating straw purchases involving Tilotta and others." *Id*. It does not address any statements of other alleged coconspirators such as Hamel, Magana, or Bajaj.

The Court should not make a blanket admissibility finding based on this paltry representation. The rule requires more. A coconspirator's statement "is admissible against the defendant if the government shows by a preponderance of the evidence [1] that a conspiracy existed at the time the statement was made; [2] the defendant had knowledge of, and participated in, the conspiracy; and [3] the statement was made in furtherance of the conspiracy." *United States v. Bowman*, 215 F.3d 951, 960-61 (9th Cir. 2000). The government's proffer does not establish any of these factors.

This not a border bust case with a limited scope of statements. Here, discovery is voluminous and has been ongoing for years. The government must pinpoint the statements it seeks to elicit under the coconspirator exception so the Court can conduct the analysis. *See United States v. James*, 590 F.2d 575, 581-82 (5th Cir. 1979). A *James* hearing would streamline the trial, prevent the jury from hearing inadmissible testimony, and minimize juror's time-commitment.

If the Court declines to hold a pretrial hearing, at a minimum it should follow the procedure outlined in *Untied States v. Cox*, 923 F.2d 519, 516 (7th Cir. 1991): "the preferable procedure would be to at least require the government to preview

2

the evidence which it believes brings the statements within the coconspirator rule before delving into the evidence at trial." Under this approach, the government would identify the statements and make a preliminary showing or summary of its evidence, and the Court would defer a final decision until the conclusion of the presentation of the evidence.

The Ninth Circuit similarly precludes admission of purported coconspirator statements without sufficient foundation. In *United States v. Silverman*, 861 F.2d 571 (9th Cir. 1988), the Court explained, an "accused's knowledge of and participation in an alleged conspiracy are preliminary facts that must be established *before* extrajudicial statements of a co-conspirator can be introduced into evidence." *Id.* at 576 (emphasis added). The government bears the burden of establishing these facts by the preponderance of the evidence, and the Court can consider the contested statements themselves along with other evidence to determine if there has been a sufficient showing. *Id.* at 577.

However, the contested statement alone "is insufficient to establish that the defendant had knowledge of and participated in a particular conspiracy." *Id.* That is because coconspirator statements bear "inherent" and "presumptive" unreliability." *Id.* at 578. To overcome this unreliability, the proffered coconspirator statement(s) "must be corroborated by fairly incriminating evidence." On the other hand, evidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative of the co-conspirator's statement

to constitute proof, by a preponderance of the evidence, that the defendant knew of and participated in the conspiracy." *Id.* As an example of sufficiently corroborative conduct, the *Silverman* court summarized *United States v. Crespo de Llano*, 830 F.2d 1532, 1543 (9th Cir. 1987): "defendant was present during negotiations for sale of cocaine, obtained sample for government undercover agent to taste, translated price of cocaine from Spanish to English, and appeared at prearranged location for the cocaine transaction."

Here, in sharp contrast, there is no such facial illegality. To the contrary, Mr. Tilotta is a licensed firearms dealer who faces prosecution for selling firearms in this capacity. True, the government says he crossed certain lines, but his facially innocent conduct of transacting and documenting firearms sales cannot suffice as independent corroboration for the admission of purported coconspirator statements.

Beginning where we started, the government asks the Court to pre-judge admissibility of unknown statements made by unspecified individuals on unknown dates over a several-year span. Rather than accede to this request, the Court should require the government to identify the purported statements in a systematic fashion. Only then can Mr. Tilotta provide a meaningful response and the Court exercise its gatekeeper function.

**2.    Expert testimony.**

The government has noticed ATF Investigator Chimileski as an expert witness on firearms regulations.  Mr. Tilotta makes the following comments.

The government downplays its ask.  It seeks to have its witness opine on laws and regulations.  But such "'matters of law' are generally inappropriate subjects for expert testimony."  *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008).  Although the government claims courts "routinely" admit such testimony, Govt. Motion at 6, in actuality it is only in "rare, highly complex and technical matters where a trial judge, utilizing limited and controlled mechanisms, and as a matter of trial management, permits some testimony seemingly at variance with the general rule."  *Id.*, quoting *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 101 (1st Cir. 1997).

The government's example proves the point.  In *United States v. Offill*, 666 F.3d 168, 171 (4th Cir. 2011), the defendant was charged with securities registration violations, securities fraud, and wire fraud.  The transactions were complex, and the defense evidence included "legal opinion letters and stock subscription agreements for the transactions, asserting that the registration exemptions of Rule 504 and TAC § 139.19 applied to the transactions."  *Id.* at 172.

Given the highly technical nature of the case, the prosecution's experts were allowed to testify about "securities law concepts and practice, including securities registration, exemptions from registration, restricted and unrestricted securities, and the functioning of markets."  *Id.* at 173.  The Fourth Circuit approved the

5

testimony to assist the jury understand "highly technical legal issues." *Id.* at 175. Still, it took pains to caution that "it does not help the jury for an expert to give testimony that states a legal standard or draws a legal conclusion by applying law to the facts because it supplies the jury with no information other than the witness's view of how the verdict should read." *Id.* at 175 (quotation omitted).

All this is to say the government must tread lightly on any expert opinion it seeks to introduce. It must be held to its word that it will not ask Mr. Chimileski "for any ultimate legal conclusions," Govt. Motion at 7, and it also should be precluded from asking any hypotheticals in a thinly veiled attempt to elicit testimony about Mr. Tilotta's intent. *See id.* at 177 (hypotheticals are permissible, "subject of course to the limitations that the witness not testify to the defendant's 'intent' as precluded by Rule 704(b).").

Finally, Mr. Tilotta is confused by the government's conclusory statement that the expert testimony will be "especially important in a case where the United States must prove willfulness—i.e., proof that [Mr. Tilotta] knew his conduct was unlawful." Govt. Motion at 7. The defense does not understand how the expert's testimony will provide insight into Mr. Tilotta's mental state without crossing an impermissible line.

**3. Defense expert witnesses.**

As Mr. Tilotta explained to the government in a meet and confer session, he does not intend to call an expert witness.

**4.    Rule 404(b) evidence.**

*A.  404(b) evidence related to Mr. Anton*

The government notices three distinct types of other-act evidence it seeks to introduce against Mr. Anton, none of which involves Mr. Tilotta. To the extent the evidence will tar Mr. Tilotta by the same brush for simply sitting at the same defense table, the Court should consider either limiting such testimony or severing defendants.

*B.  404(b) evidence related to Mr. Tilotta.*

The government seeks to inform the jury that Mr. Tilotta and his business "were previously inspected" by the ATF and the California DOJ in 2013. But these are the acts of others, not Mr. Tilotta, and should not be admitted under Rule 404(b).

To the extent they would be analyzed under Rule 404(b), the Court should exclude the evidence as remote, unnecessary, cumulative, and prejudicial under Rule 403.

The same holds true for the government's effort to establish he committed a prior straw purchase. The ATF made no finding that Mr. Tilotta knowingly or intentionally participated in a straw purchase but rather noted a "possible" straw purchase involving two related individuals who purchased a pistol. As such, it cannot meet its burden of establishing the "evidence is sufficient to support a finding that the defendant [knowingly] committed the other act." *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994).

7

Finally, the Court should reject the government's secondary premise for each of the proffered categories of 404(b) evidence against Mr. Tilotta, that he was put on notice of the illegality of certain conduct. Everyone in society is presumed to know the law; there is no requirement the government establish prior notice. Instead, the government wants the jury to conclude he did it before, so he's doing it again. This, of course, is an improper purpose: character.

**5.   Firearms in the courtroom**

The Court should reject the government's request to bring guns into the courtroom. Mr. Tilotta is a federal firearms licensee. There is no dispute the firearms in this case are firearms or that the particular firearms alleged in each count are not what they purport to be. Mr. Tilotta will so stipulate.

We all know why the government wants to bring the actual guns into the courtroom. It is not so the jurors can "understand this evidence." Govt. Motion at 15. Rather, it is for a wholly improper purpose – to sensationalize the trial and parade before the jury scary weapons.

Where there is zero probative value but there are security and 403 concerns, the Court should preclude the firearms.

**6.   Business records**

Mr. Tilotta has no particular objection to business records. He awaits the government's exhibit list and will alert the Court to any concerns.

**7.     Digital evidence**

Mr. Tilotta likewise has no particular objection to digital records, and again awaits an exhibit list for any concerns to raise with the Court.

**8.     Vik Bajaj's testimony**

Mr. Tilotta will not object to Bajaj's testimony based on any attorney-client privilege.

**9.     Search of Mr. Anton's home and potential Rule 403 concerns**

This motion pertains to Mr. Anton exclusively.

**10.    Advice of counsel defense**

Mr. Tilotta is not proffering an advice of counsel defense.

**11.    Recantation defense**

This motion pertains to Mr. Anton only.

**12.    Entrapment defense.**

This motion also pertains only to Mr. Anton.

                                                Respectfully submitted,

Dated: December 19, 2021           */s Jeremy Warren*
                                            Jeremy Warren