LINDA FRAKES
Attorney for the United States
Acting Under Authority
Conferred by 28 U.S.C. § 515
Nicholas W. Pilchak
CA State Bar No. 331711
Andrew R. Haden
CA State Bar No. 258436
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619)546-9709 / 6961
Email: nicholas.pilchak@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GIOVANNI VINCENZO TILOTTA (3),<br>  aka "Gio Tilotta,"<br>WAIEL YOUSIF ANTON (5),<br>  aka "Will Anton,"<br><br>Defendants. | Case No.: 19-CR-4768-GPC<br><br>Date:        January 7, 2022<br>Time:       2:30 p.m.<br><br>Honorable Gonzalo P. Curiel<br><br>**UNITED STATES' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE PREJUDICIAL EVIDENCE OF A RECANTATION DEFENSE** |

      In his response to the United States' motion *in limine* to preclude irrelevant and prejudicial evidence of his supposed recantation, Defendant Waiel "Will" Anton casts his defense argument as one based on renunciation, withdrawal or abandonment, and seeks to admit evidence under that label instead. ECF 237 at 11–14. But the law of renunciation is even clearer than the law of the recantation defense which Anton has apparently renounced: renunciation is not a valid defense to a completed attempt. Indeed, "[c]riminal intent and contrition are not mutually exclusive states of mind." *United States v. Bailey*, 834 F.2d 218, 227 (1st Cir. 1987). Because Anton's crime of

attempting to obstruct justice was completed five days before his claimed renunciation—which was apparently made only after consulting with a pair of attorneys—his later statements seeking to un-obstruct justice do not relate to any colorable defense. They should be excluded.

### A. Renunciation Is Not A Defense To A Completed Attempt.

"[W]ithdrawal, abandonment and renunciation, however characterized, do not provide a defense to an attempt crime." *United States v. Shelton*, 30 F.3d 702, 706 (6th Cir. 1994). The Ninth Circuit has squarely held that "voluntary abandonment of an attempt which has proceeded well beyond preparation as here, will not bar a conviction for the attempt." *United States v. Bussey*, 507 F.2d 1096, 1098 (9th Cir. 1974) (citation omitted); *see also United States v. Temkin*, 797 F.3d 682, 690 (9th Cir. 2015) (defendant's "abandonment argument fails because abandonment is not a defense when an attempt, as here, 'has proceeded well beyond preparation,'" citing *Bussey*).[1] Other circuits agree.[2] In fact, the Eighth Circuit noted in 2010 that "all of our sister circuits that have faced this issue have either held that a defendant cannot abandon a completed

---

[1] Anton's response cites *Bussey* as "recognizing [an] abandonment defense to the crime of attempt," ECF 237 at 13, but in truth, *Bussey* did not squarely recognize such a defense. *Bussey* simply held that the defendant's conduct in that case did not demonstrate abandonment sufficient to warrant an abandonment jury instruction because he had already proceeded well beyond preparation before his plans were frustrated. 507 F.2d at 1098.

[2] *See, e.g., United States v. Young*, 613 F.3d 735, 745 (8th Cir. 2010) ("We hold today that a defendant cannot abandon an attempt once it has been completed."); *United States v. Crowley*, 318 F.3d 401, 410–11 (2d Cir. 2003) (not formally addressing the issue but noting, "[t]he only other circuits that have formally addressed the question have rejected the defense as a matter of federal law"); *Shelton*, 30 F.3d at 706; *United States v. Wales*, 127 Fed. App'x 424, 432 (10th Cir. 2004) (unpub.) ("[N]either this circuit nor any other circuit to have addressed the issue has held that abandonment or renunciation may constitute a defense to the completed crime of attempt.").

attempt or have alluded to such a determination." *United States v. Young*, 613 F.3d 735, 744 (8th Cir. 2010) (citing cases).

In truth, the cases Anton cites as supposedly recognizing an abandonment or withdrawal defense do one of two quite distinct things. Some assume *arguendo* that such a defense could exist but reject a defendant's appeal because of insufficient evidence of abandonment. *E.g.*, *United States v. Bailey*, 834 F.2d 218, 227 (1st Cir. 1987) (without deciding whether abandonment constituted a defense, affirming district court's refusal to instruct on defense because there was no evidence of complete and voluntary renunciation of criminal purpose); *United States v. McDowell*, 705 F.2d 426 (11th Cir. 1983), *reh'g denied*, 714 F.2d 106 (11th Cir. 1983) (assuming renunciation was a valid defense, defendant nevertheless did not produce evidence of complete and voluntary renunciation); *United States v. Rivera-Sola*, 713 F.2d 866, 870–71 (1st Cir. 1983) (same). Other cases (most notably *United States v. Joyce*) describe the defense as abandonment but find that the defendant had abandoned his criminal plan *before* taking a substantial step—i.e., that he had not truly committed the crime of attempt. 693 F.2d 838, 841 (8th Cir. 1982) ("there was clearly insufficient evidence to establish that [defendant] engaged in conduct constituting a 'substantial step' toward the commission of the crime of possession of cocaine with the intent to distribute").

Crucially, apart from a 1987 case from the United States Court of Military Appeals, Anton cites no case that actually held that abandonment (or withdrawal or renunciation) is an affirmative defense to the completed crime of attempt. *Cf. United States v. Byrd,* 24 M.J. 286 (Ct. Mil. App. 1987).[3]

---

[3] Anton's lead cited case, *United States v. $11,500 in U.S. Currency*, is even further afield. 869 F.3d 1062, 1072 (9th Cir. 2017). While that decision does contain a footnote with the language that Anton block quotes, the real basis for the decision was the court's concern that the defendant-claimant had actually done nothing demonstrating an intent to use the seized currency to facilitate drug trafficking. *Id*. Put more bluntly, the defendant-claimant hadn't attempted to *do* anything. Anton's case is quite the opposite. He took repeated and substantial steps confirming his criminal purpose to obstruct justice.

**B.     Anton's Crime Was Complete Five Days Before His Supposed Renunciation.**

This legal clarification is key because Anton completed the crime of attempting to obstruct justice almost a week before his dubious change of heart. Put another way, Anton's claimed withdrawal didn't occur in the run-up to some future crime before it had been brought to fruition; it occurred five days *after* Anton's crime was complete.

For his part, Anton seems to presuppose that his crime had not yet been consummated because the putative witness—in truth, an ATF undercover agent—had not yet been interviewed. ECF 237 at 5 ("this [evidence] would prove that Mr. Anton is innocent of corruptly attempting to obstruct an investigation by countermanding his request [that] the witness omit or deceive before any supposed interview ever was to take place"). Yet because the "witness" was really an undercover agent and the interview would never have taken place regardless, this argument proves too much. In effect, Anton contends that he was unable to complete the crime of attempting to obstruct justice unless and until the witness whom he urged to lie to federal agents did so. But this supposition is both legally and factually incorrect.

It is legally incorrect because urging a witness to lie to investigators is the quintessentially complete crime of seeking to obstruct justice. *E.g.*, *United States v. Khatami*, 280 F.3d 907, 915 (9th Cir. 2002) (attempting to persuade witnesses to lie to investigators is sufficient evidence of obstruction of justice). Nothing more is required. In other words, guilt for attempting to corruptly persuade a witness does not require success. If it did, the "attempt" language in the statute would be a nullity.

Anton's argument is also factually incorrect because after urging the "witness" to lie, he needed to do nothing more to perfect the crime of seeking to obstruct justice. After all, the charged offense is attempting to "knowingly . . . corruptly persuade[] another person . . . with intent to hinder, delay, or prevent the communication to a law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1503(b)(3). Having repeatedly and

vociferously urged the "witness" to lie to investigators, there were no more steps for Anton to take to attempt to obstruct justice. He had already done so.

Moreover, nothing about Anton's conduct was ambiguous or incomplete. In fact, Anton's purpose and intent in exhorting the witness to lie could not have been clearer. He told the undercover agent *nine times* in *six minutes* not to mention that he had paid Anton for his services and added that the undercover should affirmatively lie about their relationship to explain Anton's conduct. Then Anton repeated the same instructions the following day, just in case the "witness" didn't understand his overture the first time.

Accordingly, having already attempted to obstruct justice, the only question is whether there is some valid affirmative defense that could undo Anton's fully baked criminal liability. As set out above, there is none. Accordingly, the evidence of Anton's efforts to withdraw or renounce five days after completing the crime of attempt should be excluded because it is not evidence of any valid defense and could serve only to mislead or confuse the jury.[4]

### C.   Anton Supposedly "Renounced" Only After Consulting Defense Attorneys.

But this evidence should also be excluded because it raises a vexing issue about the circumstances under which Anton completely reversed his plans. Curiously, Anton's motion response fails entirely to respond to the United States' pointed observation that he only sought to "renounce" his attempt to obstruct justice after speaking with a pair of criminal defense lawyers—apparently including his trial

---

[4]   Anton's argument would be closer to the mark had he reversed course during his initial phone call. Had he countermanded his instructions to lie before signing off and leaving the "witness" to relay the false information, Anton might have a colorable argument that he had not yet gone beyond mere preparation and taken a substantial step to obstruct justice, or at least that this Court should break new ground and recognize a renunciation defense previously unknown in the Ninth Circuit. But this invitation to make new law is far less inviting since Anton knew that the "witness" could be contacted by federal agents at any moment and left his instructions to lie in place for five days.

counsel. *See* ECF 224 at 22, 24. Indeed, the attached timeline demonstrates how Anton's sharp volte-face occurred only after these consultations. *See* Exhibit G. The attached timeline recounts not only Anton's 4:59 p.m. call to the undercover agent ("UCE") on February 13, 2019 in which he repeatedly urged him not to tell investigators about his $1,000 cash payment to Anton, but his further call to the agent at 1:32 p.m. on the following day, February 14, 2019, in which he repeated that instruction. It also shows how Anton began feverishly attempting to reach the undercover agent by phone, text, phone, and phone (again) starting at 11:15 a.m. on February 18, 2019—less than two hours after a call from Anton to the law office of Eugene Iredale.

Certainly, Anton has cited no case allowing a renunciation defense where a defendant's change of heart arose after speaking with a criminal defense attorney. This matters because even Anton's most-favorable authority—the Model Penal Code's provision on attempt and withdrawal, which has never been accepted in the Ninth Circuit—requires a *voluntary* withdrawal. A defendant who abandons or withdraws from his criminal enterprise because it is more likely to be discovered by authorities does not qualify for the defense.[5] And of course, a defendant who meets with counsel is far more likely to appreciate that his conduct is likely to be discovered.

Permitting Anton to introduce evidence of his effort to un-obstruct justice almost a week after attempting to obstruct would necessarily invite the tangled and difficult issue of how to provide the jury with the requisite context for that effort, including especially Anton's apparent consultations with counsel. The clearest course, particularly given the evidence's legal irrelevance, is exclusion.

---

[5] Model Penal Code § 5.01 provides that "[w]ithin the meaning of this Article, renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal purpose." *See United States v. Jackson*, 560 F.2d 112, 118 (2d Cir. 1977).

# CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court grant its Motion *In Limine*.

DATED: December 31, 2021

                                              LINDA FRAKES
                                              Attorney for the United States
                                              Acting Under Authority
                                              Conferred by 28 U.S.C. § 515


                                              /s/ Nicholas W. Pilchak
                                              NICHOLAS W. PILCHAK
                                              Assistant United States Attorney

                                              /s/ Andrew R. Haden
                                              ANDREW R. HADEN
                                              Assistant United States Attorney