UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>GIOVANNI VINCENZO TILOTTA (3),<br>WAIEL YOUSIF ANTON (5),<br><br>                              Defendants. | Case No.:  19-CR-4768-GPC<br><br>**ORDER GRANTING GOVERNMENT'S MOTION IN LIMINE**<br><br>**[ECF No. 224]** |

## I.   Introduction

Presently pending before the Court is the Government's Motion in Limine to Exclude Prejudicial Evidence of a Recantation Defense. ECF No. 224. The motion has been fully briefed (ECF Nos. 237, 239, 250, 254) and argued at a hearing held on February 18, 2022. Having considered the papers, applicable law, and arguments of counsel, the Court **GRANTS** the motion in limine and excludes evidence of a recantation defense finding that such a defense does not apply to a charge of attempted obstruction of justice.

/ / /

/ / /

## II. Factual Background

Defendant Waiel Yousef Anton is charged with, among other offenses, attempted obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3).

The facts that give rise to the charge at issue in this motion in limine are as follows: Following the instructions of Defendant Morad Marco Garmo, an undercover ATF agent who Mr. Anton believed was a client named "Sean" (hereafter, "UCA") contacted Mr. Anton to more quickly get a permit to carry a concealed weapon (referred to as CCWs). ECF No. 224, U.S. Mot., at 3. Anton met with the UCA on February 5, 2019. *Id.* Anton charged the UCA $1,000 for his consulting services, "which mostly consisted of calling the clerk at the Sheriff's Department to whom Anton had made an unlawful cash payment to secure an appointment about eight months earlier than those then available to the public." *Id.*

On February 13, 2019 (eight days later), federal agents searched Anton's home. *Id.* at 4. Anton called the UCA and "urged" him not to tell federal investigators about the transaction between the UCA and Anton in which Anton solicited and accepted $1,000 in exchange for securing an earlier CCW appointment. *Id.* The next day, Anton called the UCA again and repeated his instructions that the UCA should deny paying Anton any money. *Id.* at 21.

On February 18, 2019 (five days after the first phone call), Mr. Anton called the UCA. *Id.* During the phone call, Anton said "if anybody every asks you . . . if they ask you questions or anything like that you just tell them the truth." *Id.* Apparently, during one of their conversations between February 13 and February 18, the UCA told Anton that he would be out of town and unable to speak with him on the phone until he returned. Thus, the defense asserts February 18 was the earliest date Mr. Anton believed he would be able to speak with the UCA.

2

19-CR-4768-GPC

On February 19, 2019, the UCA called Anton and (falsely) claimed the FBI wanted to interview him. *Id.* at 22. Anton stated again that the UCA should "[t]ell them the truth." The UCA asked, "I'm saying, you were just telling me, tell them not to say anything about the money, so I'm trying to figure it out," to which Anton responded, "No, I didn't tell you that. No, I didn't tell you that. I told you, yeah go ahead, you tell them whatever you want to tell them." *Id.* After the call, Anton and the UCA exchanged text messages in which "Anton repeatedly exhorted the UCA to tell the truth." ECF No. 224, U.S. Mot, at 22 n.17.

Between the February 13, 2019 phone call (instructions to lie) and the February 18, 2019 phone call (instructions to tell the truth), Anton spoke with at least two attorneys: Vikas Bajaj (on February 13 and February 15) and trial counsel Eugene Iredale (on February 15 and February 18, when Anton called ). ECF No. 224, U.S. Mot. at 22; ECF No. 239-1, Ex.C at 2-3.

### III. Procedural Background

In the pending Motion in Limine regarding the "Recantation" defense, the United States moves to preclude Anton from introducing evidence from the February 18 and February 19 phone calls for the purpose of presenting the defense. ECF No. 224 at 21. In his opposition, Anton argued the "abandonment" defense should be available to him at trial. ECF No. 237 at 11. The United States replied. ECF No. 239. At the January 12, 2022 hearing on the motions in limine, the Court deferred ruling on the recantation defense issue. ECF No. 243. Anton filed a supplemental opposition in support of arguing an "abandonment" defense, ECF No. 250, and the Government filed a further reply, ECF No. 254. A hearing on the Government's motion was held on February 18, 2022. ECF No. 243.

//
//

## IV. Appliable Legal Standards

### a. Motions in Limine

This court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States*, 469 U.S. 38, 41 n. 4, (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. *See The Middleby Corp. v. Hussmann Corp.*, No. 90 C 2744, 1993 WL 151290, at *1, 1993 U.S.Dist. LEXIS 6150, at *1–2 (N.D.Ill. May 5, 1993). *See generally* 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure ¶¶ 5037, 5042 (1977 & Supp. 1993). Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400–01 (N.D. Ill. 1993). Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. Granting a motion in limine means that the Court has found that the excluded evidence is likely to be unduly prejudicial or confuse the issues for the trier of fact. However, in either case, the Court may revisit the ruling at trial based upon the state of the record. *Luce v. United States*, 469 U.S. 38, 41-42 ("the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

Here the Government moves to exclude evidence regarding the Defendant's "recantation" defense on the grounds that such a defense is unavailable to defendants charged with attempt.[1] The Government asserts that Ninth Circuit law takes this position,

---

[1] The Court notes here that the terminology used by the Government and the Defendant varies throughout the briefing. In the Government's opening brief, the motion in limine seeks to preclude the Defendant from introducing evidence that goes to a "recantation" defense, seemingly relying on

as do a number of the other courts of appeals. The Defendant disagrees, relying on the Model Penal Code and several cases where an abandonment defense has been examined.

### b.   Abandonment Defense

A basic tenet of federal criminal law is that "[t]here is no general federal statute which proscribes the attempt to commit a criminal offense. Thus, attempt is actionable only where a specific criminal statute outlaws both its actual as well its attempted violation." *United States v. Rivera-Sola*, 713 F.2d 866, 869 (1st Cir. 1983). In the Ninth Circuit, as elsewhere, "[a] conviction for attempt requires proof of culpable intent and conduct constituting a substantial step toward commission of the crime that strongly corroborates that intent." *United States v. Snell*, 627 F.2d 186, 187 (9th Cir. 1980). Thus, the challenge in cases where the defendant is charged with attempt involves elusive line which separates mere preparation from a 'substantial step,'" *Rivera-Sola*, 713 F.2d at 869 (internal citations omitted). Here, the Government's motion in limine raises a different question: where there is arguably both culpable intent and conduct which constitutes a "substantial step" is it possible for the defendant to have abandoned the attempt?

       i.   *The Ninth Circuit Has Not Directly Addressed the Abandonment Defense for Attempt Offenses*

At bottom, the Government's primary argument is that there is no abandonment defense available for the charged crime. However, notwithstanding the Government's contention that Ninth Circuit law precludes an abandonment defense, there are no cases

---

language that is used in the context of 18 U.S.C. § 1623(a), the statute that proscribes making false statements under oath in a court or grand jury proceeding. *See* ECF No. 224, U.S. Mot., at 23. The Government cites *United States v. Denison*, 663 F.2d 611, 616-617 (5th Cir. 1981), which held that a defendant could not use as a defense that he recanted perjurious statements made in a court or grand jury proceeding. The Government does not rely on this case in their Reply brief. By contrast, Defendant uses the terms "renunciation," which follows language in the Model Penal Code, along with "abandonment," which is more common in the cases. To avoid confusion, the Court will refer to the defense at issue in this motion as an "abandonment" defense.

5

that are directly on point. The cases that have addressed abandonment as a defense in an attempt case have done so from a wholly different perspective, in which the court of appeals was determining whether there *was* sufficient evidence at trial for an attempt conviction in the face of abandonment, or challenges surrounding a district court's denial of abandonment instructions at the close of trial. For example, in *United States v. Temkin*, the Ninth Circuit affirmed the district court's rejection of the defendant's renunciation defense in a murder-for-hire prosecution, 797 F.3d 682, 689 (9th Cir. 2015). But in that case, the Ninth Circuit merely found that that the district court had been right to find, in bench trial, that the defendant had failed to factually prove his renunciation defense by a preponderance of evidence because the evidence he offered more readily suggested the defendant's "desire to avoid detection by law enforcement and, at most, a decision to delay—not to stop—the murder-for-hire," which contravenes the "complete" and "voluntary" requirements for the affirmative defense under the statute. *Id. Temko* does not support the Government's contention that the Ninth Circuit has clearly rejected abandonment as a defense to attempt, generally.

Similarly, in *United States v. DeRosa*, the Ninth Circuit sketched out limitations to the abandonment defense, but did not seem to reject it outright, holding that when a criminal purpose is abandoned due to fear of detection by law enforcement, that motive defeats the "voluntary" prong of an abandonment defense, 670 F.3d 889, 894 (9th Circ. 1982).

The Government also offers *United States v. Bussey*, 507 F.2d 1096, 1097-98 (9th Cir. 1974), where the Ninth Circuit held that "[a] voluntary abandonment of an attempt which has proceeded well beyond preparation as here will not bar a conviction for an attempt." Again, this case does not move the ball on the question before the court—it merely demonstrates that the Ninth Circuit thought there was sufficient evidence at trial

for the defendant to have been convicted for attempted bank robbery because his so-called abandonment was actually due to his plans being frustrated. *Id.* 1097.

The distinction between these Ninth Circuit cases and the Government's motion here is critically important: In those cases, the evidence that allegedly supported the defendant's abandonment defense *was admitted into the record* during trial and considered either by the trier of fact in deciding the case, or by the court in arriving at its conclusion on whether to include an abandonment instruction. None involved the precise issue presented here, which is whether this Court should *exclude* the evidence in limine on the theory that because abandonment is not a recognized defense, it is irrelevant to the jury's consideration of the dispositive issues at trial.

        ii.    *Other Circuits Have Rejected the Abandonment Defense*

In the absence of directly on-point precedent within this circuit, the Court now turns to those courts of appeals that have addressed the question. The Sixth and Eighth Circuits have each rejected abandonment as a defense to attempt. The Sixth Circuit in *United States v. Shelton*, explicitly rejected the Model Penal Code approach:

> [W]ithdrawal, abandonment, and renunciation, however characterized, do not provide a defense to an attempt crime. As noted, the attempt crime is complete with proof of intent together with acts constituting a substantial step toward commission of the substantive offense. When a defendant withdraws prior to forming the necessary intent or taking a substantial step toward the commission of the offense, the essential elements of the crime cannot be proved. *At this point, the question of whether a defendant has withdrawn is synonymous with whether he has committed the offense*. After a defendant has evidenced the necessary intent and has committed an act constituting a substantial step toward the commission of the offense, he has committed a crime of attempt, and can withdraw only from the commission of the substantive offense."

30 F.3d 702, 706 (6th Cir. 1994) (emphasis added).

The Eighth Circuit previously held in *United States v. Joyce*, that abandonment could preclude liability, 693 F.2d 838 (8th Cir. 1982); *see also United States v. Robinson*,

217 F.3d 560, 564 n.3 (8th Cir. 2000) (relying on *Joyce*, stated "[i]n an attempt case, abandonment precludes liability."). However, more recently, the Eighth Circuit overruled *Joyce*, holding "a defendant cannot abandon an attempt once it has been completed." *United States v. Young*, 613 F.3d 735, 745. The court explained that "all of our sister circuits that have faced this issue have either held that a defendant cannot abandon a completed attempt or have alluded to that determination." *Id.* (citing *United States v. Crowley*, 318 F.3d 401, 410-11 (2d Cir. 2003); *Shelton*, 30 F.3d at 706 (6th Cir. 1994); *United States v. Bussey*, 507 F.2d 1096, 1098 (9th Cir. 1974) ("A voluntary abandonment of an attempt which has proceeded well beyond preparation as here, will not bar a conviction for the attempt.").[2]

### iii. *Model Penal Code Formulation*

As noted above, the defense relies on the Model Penal Code's formulation of attempt to support its position. The Model Penal Code provides, in pertinent part:

> When the actor's conduct would otherwise constitute an attempt . . . it is an affirmative defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.

Criminal Attempt, Model Penal Code § 5.01(4). Abandonment must therefore be (1) complete and (2) voluntary. Under the Code, "renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose" and "renunciation is not complete if it is motivated by a decision to postpone the criminal

---

[2] While the Court does not agree with the Eighth Circuit's interpretation of *Bussey*, it is clear that the Eight Circuit in *Young* has rejected the abandonment defense for attempt.

conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim." *Id.*

Embracing the concept of "locus poenitentiae," which is the Latin phrase referring to the opportunity to reconsider, Defendant argues that "[t]he renunciation defense applies after a substantial step, but before the completion of the target offense, and precludes liability for the attempt. ECF No. 250-1, Def.'s Supp. Opp., at 2. In the Defendant's view, therefore, the abandonment/renunciation defense comes into play *not* between mere preparation and a substantial step (because, this would mean there was no "attempt" offense committed at all), but instead it "permits a person to withdraw from wrongdoing before the substantive crime and encourages people to reconsider and renounce violations of the law." *Id.* Under this formulation, abandonment is still possible after the full attempt offense—that is, the culpable intent and substantial step corroborative of that intent—has been completed. It would allow a defendant to present as a defense that he reversed course on the attempt before the commission of the object crime.

**V.    Discussion**

Given that the Ninth Circuit has not directly addressed the question of whether a defendant may present an abandonment defense when he is charged with an attempt offense, the Court considers the question here as one of first impression. For the purposes of this motion, the Court rejects the Model Penal Code approach, and instead adopts the view of the Sixth and Eighth Circuits, which have rejected the abandonment defense in the context of attempt offenses.

The Court is persuaded that a completed attempt, which requires the Government to prove a defendant's culpable intent and a substantial step strongly corroborating that intent, is indeed a completed attempt and cannot be abandoned. The key issue in this case is whether the Defendant took a substantial step toward the obstruction of justice. That is

because when a defendant who is charged with attempt, "withdraws prior to forming the necessary intent or taking a substantial step toward the commission of the offense, the essential elements of the [attempt] crime cannot be proved." *Shelton*, 30 F.3d at 706. And at that point, "[t]he question of whether a defendant has withdrawn is synonymous with whether he has committed the offense." *Id.* Without a substantial step there is no attempt at all, and once there has been a substantial step, all that can be "abandoned" is the "target offense" itself. The Court therefore finds that there is no affirmative defense of abandonment available to a defendant charged with an attempt offense.

In his motion, Defendant conceded that "Anton arguably violated 18 U.S.C. § 1512(b)(3) when he told the undercover agent to conceal or dissemble regarding the payment of the $1,000 in the unlikely event he were interviewed by law enforcement." ECF No. 237, Def.'s Opp., at 11. However, in their view, this does not preclude a colorable argument that Mr. Anton subsequently abandoned the attempt. ECF No. 250-1, Def.'s Supp. Opp., at 2-3.

The Government's motion seeks to exclude evidence supporting an abandonment defense. The Court today holds that because the abandonment defense is not available to Mr. Anton for the charge of attempted obstruction of justice, any evidence introduced for that purpose is irrelevant and inadmissible. Absent an alternative theory of relevance and admissibility unrelated to the proffered abandonment defense, Mr. Anton is precluded from introducing such evidence.

Accordingly, the Court GRANTS the Government's motion to preclude evidence that goes to an abandonment defense.

//
//
//
//

## VI. Conclusion

For the reasons set forth above, and upon consideration of the Parties' papers, applicable law, and arguments made by counsel at the motion hearing, the Court **GRANTS** the Government's motion in limine to Preclude Prejudicial Evidence of a Recantation Defense.

**IT IS SO ORDERED.**

Dated:  March 2, 2022

Hon. Gonzalo P. Curiel
United States District Judge