REBECCA G. CHURCH
Attorney for the United States
Acting Under Authority
Conferred by 28 U.S.C. § 515
Nicholas W. Pilchak
CA State Bar No. 331711
Andrew R. Haden
CA State Bar No. 258436
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9709 / 6961
Email: nicholas.pilchak@usdoj.gov

Attorneys for the United States

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GIOVANNI VINCENZO TILOTTA (3),<br>aka "Gio Tilotta"<br><br>Defendant. | Case No.: 19-CR-4768-GPC<br><br>Date:       August 19, 2022<br>Time:       2:30 p.m.<br><br>Honorable Gonzalo P. Curiel<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BASED ON A VIOLATION OF THE SECOND AMENDMENT (DOC. NO. 295)** |

In his Motion to Dismiss the Indictment based on a supposed violation of the Second Amendment, ECF 295, Defendant Giovanni Vincenzo Tilotta ("Tilotta") invites the Court to strike down the Gun Control Act and the entire "regulatory scheme for the transfer of firearms" in the United States.  This Court should deny that invitation because the crimes charged in this case are based on Tilotta's commercial conduct as a licensed firearms dealer and not his private possession of firearms for his personal defense.  As such, Tilotta's conduct falls outside the protection of the plain language of the Second Amendment, and no further historical analysis is required.  As the Supreme

Court made clear in *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), "laws imposing conditions and qualifications on the commercial sale of arms" do not implicate the Second Amendment. *Id*. at 626–27. The Court's recent decision in *New York State Rifle & Pistol Assoc., Inc. v. Bruen,* 142 S.Ct. 2111 (2022)*,* did not upset that principle. Tilotta's motion should accordingly be denied.

**I.**

**<u>STATEMENT OF THE CASE</u>**

On November 21, 2019, a federal grand jury in the Southern District of California returned a 23-count indictment charging five defendants with firearms and drug trafficking offenses. Tilotta was arraigned on the indictment on November 25, 2019, and pleaded not guilty. Three of his co-defendants subsequently pled guilty to Count 1 of the indictment.

A federal grand jury returned an eight-count superseding indictment against Tilotta and co-defendant Will Anton ("Anton") on April 2, 2021. Both men pleaded not guilty to those charges, as well. The Court dismissed counts 3 and 6 of the superseding indictment on January 12, 2022. ECF 243. On July 15, 2022, Anton pleaded guilty. ECF 290.

Tilotta is charged in Counts 1, 2, 4, 5, and 7 of the Superseding Indictment. ECF 152. All of the charges relate to Tilotta's role as the Federal Firearms Licensee ("FFL") during the sale, acquisition, and transfer of firearms for other individuals. Specifically, he is charged with a conspiracy to make false statements in the acquisition of a firearm (Count 1), aiding and abetting dealing in firearms without a license (Count 2), aiding and abetting false statements in the acquisition of a firearm (Counts 4 and 5), and the unlawful sale of a firearm (Count 7). Crucially, none of these charges relate to Tilotta's right to personally possess or bear any firearms for his own defense.

Tilotta's case is set to proceed to jury trial on August 30, 2022. ECF 267.

## II.

## STATEMENT OF FACTS

Former Sheriff's Captain M. Marco Garmo engaged in the business of dealing in firearms without a license for years.[1]  Garmo was assisted in this illegal enterprise by Tilotta, Anton,[2] and others.  Tilotta acted as Garmo's willing FFL—a licensed gun dealer willing to bend and break the laws for firearms transfers involving Garmo and his close associates.  Specifically, Tilotta knowingly processed straw transfers in which Garmo and Fred Magana[3]—Garmo's immediate subordinate at the San Diego County Sheriff's Department ("SDCSD")—acquired desirable new off-roster handguns for others, including especially Leo Joseph Hamel.[4]  Tilotta unlawfully processed transfer paperwork for firearms transactions that had not properly speaking even begun, because the parties hadn't yet appeared at his dealer (Honey Badger Firearms) to begin the paperwork, and then allowed the parties to backdate the required forms after the fact. Tilotta also processed a firearms transaction at an unlawful location: a firearms transfer for defense attorney Vikas Bajaj inside Garmo's Captain's office at the SDCSD Rancho San Diego station.[5]  None of this conduct involved Tilotta's own possession of firearms for his personal use or protection.

---

[1]      This is a summary statement of facts for purposes of this brief only.

[2]      On July 15, 2022, Anton pleaded guilty to attempted obstruction of justice. ECF 291.  He also pleaded guilty to attempted obstruction of justice in related case no. 22-cr-1142-GPC. *Id.*

[3]      On November 22, 2019, Magana pleaded guilty to aiding and abetting Garmo's unlicensed dealing in firearms.  ECF 8, 17.

[4]      On November 22, 2019, Hamel pleaded guilty to aiding and abetting Garmo's unlicensed dealing in firearms.  ECF 8, 13.

[5]      On December 9, 2020, Bajaj entered a guilty plea to aiding and abetting the false entry of dealer records by Tilotta in related case no. 20-cr-3905-JLB; *see* ECF 5, 7.

### III.

### LEGAL STANDARD

The plain text of the Second Amendment states that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., Amdt. 2.  In *District of Columbia v. Heller*, the Supreme Court first held that "the Second Amendment conferred an individual right to keep and bear arms."  554 U.S. at 595.  It went on to note that "the right was not unlimited," *id.*, and specifically noted that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27.

Numerous decisions in the federal district courts and courts of appeals have relied upon that clear language to uphold a variety of long-standing firearms laws against Second Amendment challenges in the roughly 14 years since *Heller*.  *E.g.*, *United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011) (upholding statute prohibiting drug user from trafficking in firearms against Second Amendment challenge).   Recently, however, in *New York State Rifle & Pistol Assoc., Inc. v. Bruen,* the Court rejected part of the test used by many post-*Heller* courts of appeal.   142 S.Ct. 2111 (2022). Specifically, it ruled that, "*When the Second Amendment's plain text covers an individual's conduct*, the Constitution presumptively protects that conduct.   The government must *then* justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."   *Id.* at 2129–30 (emphasis added).

/ /

/ /

/ /

/ /

# IV.

# ARGUMENT

Tilotta's motion makes only the barest gesture at connecting his challenged conduct to the Second Amendment: they both involve firearms.  *See* ECF 295 at 2 ("Because these regulations and statutes limit the ability of citizens to acquire and possess firearms for self-defense, they implicate the core of the Second Amendment."). But he never explains how his own commercial conduct as a firearms dealer qualifies for protection under the plain text of the Second Amendment, which protects the right of individuals to keep and bear arms for their own self-defense.  In truth, it does not, and Tilotta's motion fails on those grounds.

The Second Amendment safeguards the right of "the people to keep and bear arms."  The definition of "keep" naturally encompasses the intent to retain possession. *See Bruen,* 142 S.Ct. at 2134 (individuals often "keep" firearms in their home); *see also Teixeira v. County of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017).  The "definition of 'bear' naturally encompasses public carry." 142 S.Ct. at 2134.  In combination, the Second Amendment's plain text presumptively guarantees the right to retain firearms and to carry them at home, or in public, for self-defense.  The decision in *Bruen* bears this out: the Court's painstaking historical analysis was only undertaken *after* it concluded that the challenged law—rigorous limitations on the issuance of permits to carry firearms in public for personal protection—infringed on the right of law-abiding citizens to carry guns to protect themselves.  *Id.* at 2135.

In committing the conduct charged in this case, Tilotta did not seek "to keep or bear" firearms.  To the contrary: all of the charged conduct relates to his commercial conduct as a firearms dealer, participating in the acquisition or transfer of firearms for other people.  In fact, none of the firearms charged in this case were ever owned or received by Tilotta personally.  In his motion, Tilotta does not even assert that he needed (or sought) to possess or carry any of the relevant firearms for his own self-defense. Nor is he charged with crimes that restrict his ability to participate in such conduct in

his personal capacity.  Instead, Tilotta has laid a constitutional challenge against the whole of the statutes and ATF regulations related to the commercial sale and transfer of firearms by a licensed dealer.  But because his charged conduct does not relate to his "keep[ing] or bear[ing] arms," Tilotta's challenge simply does not implicate the plain text of the Second Amendment.

Importantly, the Ninth Circuit reached the same result when it conducted post-*Heller* analysis of regulations of the sale of firearms.  *See Texeira*, 873 F.3d at 683 (where the court concludes "Nothing in the text of the Amendment, as interpreted authoritatively in *Heller*, suggests the Second Amendment confers an independent right to sell or trade weapons." (citing *Heller,* 128 S.Ct. at 2783)).  The Ninth Circuit has also rejected a post-*Heller* constitutional challenge to 18 U.S.C. § 922(a)(1)(A). *United States v. Castro*, No. 10-50160, 2011 WL 6157466 (9th Cir. Nov. 28, 2011) (unpub.) (the "Supreme Court has made it clear that the government can continue to regulate commercial gun dealing.").  Tilotta's motion founders on the rocks of this binding authority.[6]

Because the plain text of the Second Amendment does not protect Tilotta's conduct, the analysis can and should stop there.  *Bruen* itself confirmed that, if the "regulated conduct" falls outside the Second Amendment, "then the analysis can stop

---

[6]   Indeed, given *Heller's* guidance that the commercial sale of firearms does not trigger full Second Amendment protections, and because that guidance was undisturbed by *Bruen* and has been upheld by Ninth Circuit caselaw in the years since *Heller*, this Court is not free to write on a clean slate in deciding Tilotta's motion.  Binding precedent may be deemed overruled only "where the reasoning or theory of" the earlier "authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc), *overruled on other grounds by Sanchez v. Mayorkas*, 141 S. Ct. 1809 (2021). That "is a high standard." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (citation omitted). "[T]ension" between cases is not enough. *Id.* (citation omitted). Thus, "[s]o long as [a] court can apply our prior precedent without running afoul of the intervening authority it must do so." *Id.* (citation omitted). *Bruen* does not come close to meeting that high standard.

there; the regulated activity is categorically unprotected." 142 S.Ct. at 2126 (quotation omitted). Thus, Tilotta's motion to dismiss based on an alleged violation of the Second Amendment should simply be denied, without the necessity of inquiring whether the challenged regulations are "consistent with the Nation's historical tradition of firearm regulation." *Bruen,* 142 S.Ct. at 2129–30.[7]

While few cases have yet interpreted *Bruen*, three of the Justices in the *Bruen* majority—to say nothing of the three Justices in dissent—wrote or joined concurrences emphasizing that the Court's holding was narrow, and that *Bruen* would not provide relief for individuals like Tilotta. In his concurrence, Justice Alito emphasized "[a]ll that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home for self-defense" and that a law that makes doing so "virtually impossible" may be unconstitutional." *Bruen,* 142 S.Ct. at 2159 (Alito, J. concurring).[8]

Justice Kavanaugh, joined by Chief Justice Roberts, wrote separately to underscore that the Second Amendment allows a "variety" of gun regulations. *Bruen,* 142 S.Ct. at 2162 (Kavanaugh, J. concurring). He reiterated that the rights secured by the Second Amendment are not unlimited, and that the Court's decision should not be

---

[7]    Even if the Court were inclined to reach the second prong of the *Bruen* analysis, which is unwarranted, the United States observes that National Firearms Act ("NFA") was originally enacted in 1934. The NFA and its progeny, including the Gun Control Act of 1968 which was passed after the assassination of President John Kennedy, Attorney General Robert Kennedy and Dr. Martin Luther King, Jr., are deeply rooted in the history and traditions of the nation's regulation of firearm transfers and sales. *See* https://www.atf.gov/rules-and-regulations/national-firearms-act           and https://www.atf.gov/rules-and-regulations/gun-control-act. At trial, the United States intends to call an expert from ATF's Industry Operations. His testimony will further develop the factual record related to the regulations of firearms transfers and sales.

[8]    *See also id*. at 2157 ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . . Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns.") (Alito, J., concurring).

taken as casting doubt on "laws imposing conditions and qualifications on the **commercial sale of arms**." *Bruen,* 142 S.Ct. at 2162 (Kavanaugh, J. concurring) (quoting *Heller,* 128 S.Ct. at 2783) (emphasis added).  This statement is consistent with Justice Kavanaugh's majority opinion in *McDonald v. Chicago*, 561 U.S. 742 (2010), which forcefully emphasized that: "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.'  We repeat those assurances here." *Id*. at 786 (citation omitted).

Moreover, because Tilotta's motion is properly decided before reaching the "history and traditions" analysis undertaken by *Bruen*, further development of the caselaw after the *Bruen* holding is unnecessary to resolve it.  This is because *Bruen's* analysis at the first step—whether the regulated conduct is covered by the "plain text" of the Second Amendment—is "[i]n keeping with *Heller*."  142 S. Ct. at 2126.  That analysis was not changed by *Bruen* and is indeed well-settled.  Under that well-established principle, Tilotta's motion must be dismissed.[9]

---

[9]     While Tilotta's challenge founders across the board, the challenge to Counts 2, 4 and 5—i.e., the counts charging false statement in the acquisition of a firearm, and conspiracy to do the same—fails for a wholly independent reason.  The Supreme Court has squarely held that "a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional." *Dennis v. United States,* 384 U.S. 855, 867 (1966); *see also United States v. Bledsoe*, 334 F. App'x 711, 711–12 (5th Cir. 2009) (unpub.) (rejecting Second Amendment challenge to conspiracy to make false statements in the acquisition of a firearm even assuming *arguendo* that the law that defendant sought to evade with the false statement was unconstitutional).  Here, even if the United States could not constitutionally regulate Tilotta's conduct of firearms transactions in the challenged manner, which is not conceded, Tilotta may not overturn a prosecution for falsifying the records required by the existing regulations.  This is because "it cannot be thought

## V.

## __CONCLUSION__

For the reasons stated above, the United States respectfully requests that this Court deny Defendant's motion to dismiss.

DATED: August 11, 2022

REBECCA G. CHURCH
Attorney for the United States
Acting Under Authority
Conferred by 28 U.S.C. § 515


/s/ Nicholas W. Pilchak
NICHOLAS W. PILCHAK
Assistant United States Attorney


/s/ Andrew R. Haden
ANDREW R. HADEN
Assistant United States Attorney

---

that as a general principle of our law a citizen has a privilege to answer fraudulently a question that the Government should not have asked." *Bryson v. United States,* 396 U.S. 64, 72 (1969). Indeed, "[o]ur legal system provides methods for challenging the Government's right to ask questions—[but] lying is not one of them." *Id.* (footnote omitted).

*Response in Opposition to Defendant's*
*Motion to Dismiss the Indictment*                                    19-CR-4768-GPC