UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br><br>  vs.<br><br>GIOVANNI TILOTTA,<br><br>                             Defendant. | Case No.: 3:19-cr-04768-GPC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**<br><br>[ECF No. 295] |

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the United States Supreme Court laid out a new test to be applied in Second Amendment challenges. To determine if a law violates the Second Amendment, a court should: (1) determine whether the Second Amendment's "plain text" covers the individual's challenged conduct; and (2) if the plain text of the Second Amendment covers the individual's conduct, the regulation is valid only if the government shows the regulation is "consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022).

Defendant Giovanni Tilotta ("Defendant") has moved to dismiss the indictment based on a violation of the Second Amendment arguing that the regulatory scheme for the transfer of firearms infringes on the Second Amendment. ECF No. 295 at 1. In its response

to the motion, the Government argues that the crimes charged are based on Tilotta's commercial conduct as a licensed firearms dealer and not his private possession of firearms for his personal defense. ECF No. 298 at 1.

Based on the pleadings and arguments of counsel, the motion to dismiss indictment is **DENIED**.

## I. PROCEDURAL HISTORY

On April 2, 2021, a federal grand jury returned an eight-count superseding indictment charging Mr. Tilotta and co-defendant Will Anton. Both men pleaded not guilty to those charges. The Court dismissed counts 3 and 6 of the superseding indictment on January 12, 2022. ECF No. 243. Anton plead guilty on July 15, 2022. ECF No. 290.

Mr. Tilotta is charged in Counts 1, 2, 4, 5, and 7 of the Superseding Indictment. ECF No. 152. These charges relate to Tilotta's role as the Federal Firearms Licensee ("FFL") during the sale, acquisition, and transfer of firearms for other individuals. Specifically, he is charged with a conspiracy to make false statements in the acquisition of a firearm (Count 1), aiding and abetting dealing in firearms without a license (Count 2), aiding and abetting false statements in the acquisition of a firearm (Counts 4 and 5), and the unlawful sale of a firearm (Count 7). *Id.*

On August 1, 2022 Defendant filed a Motion to Dismiss the Indictment based on an alleged violation of the Second Amendment. ECF No. 295. The government filed a Response on August 11, 2022. A hearing was held on August 15, 2022.

## II. FACTUAL BACKGROUND

The case involves former SDCSD Deputy Sheriff M. Marco Garmo's unlawful dealing of firearms without a license. ECF No. 152 ¶ 10. Among other things, Garmo used his position as SDCSD Deputy Sheriff to obtain "off roster" handguns and resell them to other individuals. ECF No. 152 ¶ 12. Mr. Tilotta facilitated these illegal actions by allowing these transactions to be conducted under his federal license and submitting

falsified records.[1] ECF No. 152 ¶ 14. Mr. Tilotta also prepared firearms transfer records ahead of time, which allowed Garmo to avoid California's ten-day waiting period for firearms transfers. ECF No. 152 ¶ 15. Further, Tilotta conducted a firearm sale at the Rancho San Diego Substation of the San Diego County Sheriff's Department—an unlawful location to conduct a firearm transfer under California state law. ECF No. 152 ¶ 36.

### III. DISCUSSION

#### A. WHETHER THE ATF REGULATIONS IMPLICATE "CORE" SECOND AMENDMENT RIGHTS

The central argument of Defendant's Motion to Dismiss is that because the ATF regulations limit the ability of citizens to possess firearms for self-defense, they implicate the "core" of the Second Amendment, and thus should be subject to historical analysis. ECF No. 295.

Mr. Tilotta argues that 4473 Forms require licensed dealers to maintain certain records documenting, among other things, a non-licensee's name, sex, address, height, weight, and race, and that this provision burdens Second Amendment rights. ECF No. 295. Because these regulations burden the Second Amendment, the government must prove history supports such regulation. *Id.* Mr. Tilotta correctly argues that he has no burden to produce such historical support but regardless states that "he is aware of no historical antecedent establishing the type of regulatory framework involved in this case in or before the enactment of the Second Amendment." *Id.* Tilotta points out that the National Firearms Act was enacted in 1934; the ATF was created in 1972, with its 4473 Forms coming shortly after. *Id.* He argues this does not pass under *Bruen*, and thus the indictment can't stand.

---

[1] Specifically, Tilotta is charged with aiding and abetting the falsification of ATF 4473 Forms, which require federally licensed firearms dealers to document firearms sales and purchases to non-licensees. ECF No. 152 ¶ 9. The 4473 Form requires the purchaser to certify that they are the "actual transferee/buyer" of the firearm. ECF No. 152 ¶ 9. The purpose of this question is to prevent "straw purchases" to individuals not permitted to obtain the gun for whatever reason.

The Government responds that Mr. Tilotta's conduct is not protected by the plain text of the Second Amendment, and as a result, no historical analysis is required. ECF No. 298. The government further argues *Bruen* did not obfuscate *Heller*'s statement that "laws imposing conditions and qualifications on the commercial sale of arms" do not implicate the Second Amendment. *Id.*

The government argues that because Mr. Tilotta never personally owned any of the weapons at issue here, Tilotta's Second Amendment right to keep and bear arms for self-defense is not infringed. *Id.*

### 1. *Heller* and *McDonald*

Any case considering a challenge of a statute under the Second Amendment begins with a review of *District of Columbia v. Heller*, 554 U.S. 670, 574-75 (2008). *Heller* involved a challenge to a District of Columbia law that prohibited the carry of an unregistered firearm, and the registration of handguns was not permitted. As such, the Court recognized that possession of handguns (inside or outside the home) was effectively banned in D.C. *Id.* at 574. The Court held that this complete prohibition on personal handgun possession violated the Second Amendment. The Court stated that the Amendment "guarantee[s] the *individual* right to possess and carry weapons in case of confrontation." *Id.* at 592 (emphasis added). In so holding, the Court closely analyzed the text of the Amendment.

The Court first found that the Amendment's use of the phrase "the people" created a presumption that this was a right that belonged to individuals and did not require a military connection. *Id.* at 580-81. The Court found that the phrase "keep and bear arms" connotes the ability to "have" and "carry" weapons. *Id.* at 582, 584. After determining that the plain text of the Second Amendment protects an individual's right to "bear arms for defensive purposes," the Court stated that historical analysis supports this

understanding of the Amendment as well.[2]  *Id.* at 602

Still, the *Heller* Court was clear to say that "the right [to keep and bear arms is] not unlimited, just as the First Amendment's right of free speech [is] not. . . . [W]e do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*." *Id.* at 595 (emphasis in original).

Most relevant to the pending Motion, the *Heller* Court stated: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the *commercial sale of arms*." *Id.* at 626-27 (emphasis added). This statement was directly quoted in both *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010), and Justice Kavanaugh's concurrence in *Bruen*.  *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

Applying the above analysis to the D.C. regulation, the Court held the law completely banning handgun possession in the home was unconstitutional because the ability to engage in self-defense is "central" to the Second Amendment right, and the ban on handguns was a ban on an entire class of weapons "overwhelmingly chosen" by Americans for use in self-defense. *Id.* at 628-29. The Court did not address the more specific question of "licensing," as Respondents conceded at oral argument that licensing provisions are constitutional insofar as they are not applied in an "arbitrary or capricious manner." *Id.* at 631.

In conclusion, *Heller* held that a D.C. law effectively prohibiting the possession of handguns, a weapon chosen by many Americans for self-defense purposes, was

---

[2] The Court provided extensive historical analysis showing that from the founding era through the post-Civil War era, courts consistently found the Second Amendment to protect an individual's right of self-defense. *Heller*, 554 U.S. at 605-16. "It was plainly the understanding in the post-Civil War Congress that the Second Amendment protected an individual right to use arms for self-defense." *Id.* at 616.

unconstitutional because it violated the Second Amendment's protection of an individual's right to keep and bear arms for self-defense purposes.

In 2010, *McDonald* incorporated the Second Amendment right to keep and bear arms to the states. *McDonald*, 561 U.S. at 750. While much of *McDonald*'s analysis focused on the incorporation question, rather than the content and scope of the right, the Court reiterated much of *Heller*'s reasoning. Thus, while mostly an incorporation case, *McDonald* informs present day Second Amendment analysis to the extent that it reaffirmed personal possession of weapons for self-defense purposes as a "central component" of the Second Amendment.

### 2. *Bruen*

This Term, the Supreme Court in *Bruen* held that the Second Amendment protects the right to carry a handgun outside of the home. Specifically, New York state's "may issue" licensing regime violated the Second Amendment to the extent it required individuals to show "special need" prior to issuance of a license permitting public carry. *Bruen*, 142 S. Ct. at 2122. To obtain a license to carry a weapon outside of the home, an individual had to show that "proper cause" existed to issue such license, i.e., a unique need for self-defense beyond that of the general public. *Id.* at 2122-23. Further, judicial review of denials of a license to public carry was limited to what was essentially rational basis review. *Id.* at 2123. At the time of *Bruen*, six states had similar laws to New York. *Id.* By contrast, 43 states had "shall issue" regimes, in which a license *must* be issued when the individual satisfied certain objective requirements. *Id.*

The *Bruen* Court stated that *Heller* and *McDonald* recognized the Second Amendment right of "an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Id.* at 2122. *Bruen* simply extended the right of "ordinary, law-abiding citizens" to have a similar right to carry weapons for self-defense outside of the home. *Id.* at 2122. To support its holding, the Court put forth a new test in the Second Amendment context: "[W]e hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its

regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126.

In *Bruen*, the Court reiterated for the third time since *Heller* that the Second Amendment right is not unlimited. *Id.* at 2128. Some regulations are permissible, subject to the test above. The Court applied this test to the New York licensing regime in the following manner. First, the Court asked if the type of weapon at issue, handguns, was in "common use" today for self-defense. *Id.* at 2134. Neither party disputed that handguns were in "common use" today for self-defense. *Id.*

Second, the Court asked whether the "plain text of the Second Amendment protect[ed] [the] proposed course of conduct." *Id.* The Court defined the "proposed course of conduct" as "carrying handguns publicly for self-defense." *Id.* Because the "plain text" of the Second Amendment guarantees "the individual right to possess and carry weapons in the case of confrontation," the Court found that the text of the Amendment reached public carry for the purpose of self-defense. *Id.*

Because the plain text of the Second Amendment was implicated, the Court stated the government must then show that the regulation is consistent with "this Nation's historical tradition of firearm regulation." *Id.* at 2135. After completing the "long journey through the Anglo-American history of public carry," the Court concluded New York state did not meet its burden. *Id.* at 2156.

The *Bruen* Court did not hold that every firearm regulation is constitutionally invalid, or even subject to a strict historical inquiry. Justice Alito's concurrence specifically stated: "Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun." *Id.* at 2157 (Alito, J., concurring).

A court analyzing a Second Amendment challenge post-*Bruen* should proceed in three steps. First, the court should precisely define the defendant's proposed course of conduct. *See Bruen*, 142 S. Ct. at 2134. Second, the court should discuss whether the "plain

text" of the Second Amendment covers the defendant's proposed course of conduct. *See id.* Last, if the plain text includes the course of conduct, the court must decide if the government has shown that the challenged regulation is consistent with our Nation's historical tradition of firearm regulation. *See id.* at 2135.

### a. The Proposed Course of Conduct

Mr. Tilotta's proposed course of conduct is the commercial sale and transfer of firearms. Tilotta is charged with various counts involving the unlawful and unlicensed sale and transfer of firearms. For example, Tilotta assisted others in acquiring "off roster" handguns that were not legally available to them under California law. ECF No. 152 ¶ 23(a). Tilotta allegedly knowingly accepted and provided false statements on ATF 4473 Forms as to who was the true purchaser of the "off roster" handguns. ECF No. ¶ 152 23(b). Tilotta himself also created forms that were backdated, which allowed individuals to avoid the required ten-day waiting period under California law. ECF No. 152 ¶ 23(c). Mr. Tilotta also conducted firearms transfers at locations prohibited by California state law. ECF No. 152 ¶ 23(f).

All of this conduct involves the sale and transfer of firearms. As argued by the Government in their Response, none of the charges involve Tilotta's personal possession or purchase of firearms. Mr. Tilotta never personally owned or received any of the guns involved in the relevant transactions. ECF No. 298. Mr. Tilotta makes no effort in his Motion to argue that his own right to self-defense was burdened by the challenged laws.

To the extent that the regulations burden other individuals' right to obtain firearms for use in self-defense, it is not clear that Mr. Tilotta challenges the right statutes, or that he is the correct person to bring these constitutional challenges. Further, a regulation requiring truthful disclosure of various identifying information of firearms purchasers does not significantly burden the right to keep and bear arms for self-defense. ATF Form 4473 simply requires that a licensed dealer, selling a firearm to an un-licensed person, record such information as the transferee's name, sex, address, height, weight, race, country of citizenship, etc. ECF No. 295. These requirements are not as "restrictive" as

Defendant argues. *Id.* Lawful firearms to be used in self-defense can be obtained after the purchaser provides this relatively basic information.

In conclusion, Mr. Tilotta's proposed course of conduct is the commercial sale and transfer of firearms.

### b. The plain text of the Second Amendment does not cover Tilotta's proposed course of conduct

The plain text of the Second Amendment does not cover Mr. Tilotta's proposed course of conduct to commercially sell and transfer firearms, because the plain text of the Second Amendment protects an individual's right to "'possess and carry weapons in case of confrontation.'" *Bruen*, 142 S. Ct. at 2127 (quoting *Heller*, 554 U.S. at 592). "Possess and carry weapons in case of confrontation" does not imply a further right to sell and transfer firearms. *Heller*, *McDonald*, and Justice Kavanaugh's concurrence in *Bruen* all explicitly stated that the Court's opinions should not be seen as "cast[ing] doubt" on "laws imposing conditions and qualifications on the commercial sale of arms." *See Heller*, 554 U.S. at 626-27; *McDonald*, 561 U.S. at 787 (Alito, J.); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). In addition, post-*Heller*, the Ninth Circuit has stated the text of the Second Amendment does not include the right to sell or trade weapons. *See Teixeira v. County of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017); ECF No. 298.

Further, textually, the ordinary meaning of "keep and bear" does not include "sell or transfer." The *Heller* Court stated "keep" meant to "have weapons" and "bear" meant to "carry weapons." *Heller*, 554 U.S. at 582, 584. "Have and carry" is not synonymous with "sell or transfer."

The challenged laws in *Heller*, *McDonald*, and *Bruen* all involved relatively harsh restrictions on the ability of individuals to personally possess handguns for use in self-defense. The *Heller* and *McDonald* regulations virtually banned the possession of handguns in the home. *Heller*, 554 U.S. at 574-75; *McDonald*, 561 U.S. at 750-51. The *Bruen* regulation virtually banned the possession of handguns in public, absent a showing that the applicant possessed a need for self-defense unique from that of the general

public.  *Bruen*, 142 S. Ct. at 2123.  As discussed above, ATF 4473 Forms simply require transferees to provide basic identifying information.  This is not equivalent to near total bans on the possession of handguns in the home or in public.  Therefore, the Second Amendment's text does not cover Tilotta's course of conduct.

*Heller*, *McDonald*, and *Bruen* all state that the Second Amendment right is not absolute and is thus subject to reasonable limitations. *Heller*, 554 U.S. at 626 ("Like most rights, the right secured by the Second Amendment is not unlimited."); *McDonald*, 561 U.S. at 802 (Scalia, J., concurring); *Bruen*, 142 S. Ct. at 2128.  As such, a litigant could not reasonably argue that *Bruen* stands for the idea that the Second Amendment right is unfettered and that Congress or state legislatures are powerless to regulate firearm possession, much less firearm sales.  Further, simply because a law involves firearms does not mean that the Second Amendment is necessarily implicated.  *Bruen* stands for the idea that if the Second Amendment's text covers the challenged conduct, the government must provide historical evidence that such regulation is permissible.

In conclusion, the natural reading of "keep and bear arms" does not include the ability to sell or transfer firearms unrestricted.  Thus, the plain text of the Second Amendment does not cover Mr. Tilotta's proposed course of conduct, and the government need not provide historical evidence that the regulation is consistent with the Nation's history of firearms regulation.

### c. The court does not need to determine if the challenged regulations are consistent with the Nation's historical tradition of firearm regulation

If the plain text of the Second Amendment covers an individual's course of conduct, the government must show the regulation is consistent with the Nation's historical tradition of firearm regulation.  *Bruen*, 142 S. Ct. at 2126.  For the reasons stated above, the text of the Second Amendment does not cover Mr. Tilotta's course of conduct, and no further analysis is needed.  *See also* ECF No. 298 (Government's Response).

## CONCLUSION

Based on the above, the Court **DENIES** Mr. Tilotta's motion to dismiss the superseding indictment.

**IT IS SO ORDERED**.

Dated: August 30, 2022

Hon. Gonzalo P. Curiel
United States District Judge