```
 1                    UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3
     UNITED STATES OF AMERICA,      .
 4                                  .
                  Plaintiff,        . No. 19-cr-4768-GPC
 5                                  .
                     v.             . December 20, 2021
 6                                  . 11:32 a.m.
     GIOVANNI VINCENZO TILOTTA,     .
 7   WAIEL YOUSIF ANTON,            .
                                    .
 8                Defendants.       . San Diego, California
     . . . . . . . . . . . . . . . .
 9
                     TRANSCRIPT OF STATUS HEARING
10              BEFORE THE HONORABLE GONZALO P. CURIEL
                    UNITED STATES DISTRICT JUDGE
11
     APPEARANCES:
12   For the Plaintiff:      United States Attorney's Office
                             By: NICHOLAS PILCHAK, ESQ.
13                               ANDREW HADEN, ESQ.
                             880 Front Street, Room 6293
14                           San Diego, California 92101

15   For the Defendant       Warren & Burstein
     Giovanni Tilotta:       By: JEREMY WARREN, ESQ.
16                               KATIE JENKINS, ESQ.
                             501 West Broadway, Suite 240
17                           San Diego, California 92101

18   For the Defendant       Iredale & Yoo
     Waiel Anton:            By: EUGENE IREDALE, ESQ.
19                           105 West F Street, 4th Floor
                             San Diego, California 92101

20

21

22

23   Court Reporter:         Chari Bowery, RPR, CRR
                             333 West Broadway, Suite 420
24                           San Diego, California 92101
                             chari_bowery@casd.uscourts.gov
25   Reported by Stenotype, Transcribed by Computer
```

1        SAN DIEGO, CALIFORNIA; DECEMBER 20, 2021; 11:32 A.M.
2                              -o0o-
3            THE CLERK:  Calling seven on calendar, 19-cr-4768,
4   United States of America v. Giovanni Vincenzo Tilotta and Waiel
5   Yousif Anton, for status.
6            THE COURT:  Appearances.
7            MR. WARREN:  Good afternoon, Your Honor.  Jeremy
8   Warren and Katie Jenkins for Mr. Tilotta, who is present in the
9   back of the courtroom.
10           THE COURT:  Mr. Warren.
11       Ms. Jenkins.
12       And Mr. Tilotta.
13           MS. JENKINS:  Good morning, Your Honor.
14           MR. IREDALE:  Gene Iredale, Your Honor, for
15  Mr. Anton, who is present before Your Honor.  And may I wish
16  Your Honor a good morning as well.
17           THE COURT:  Mr. Iredale.
18       And Mr. Anton, good morning.
19           MR. PILCHAK:  Good morning, Your Honor.  Nicholas
20  Pilchak and Andrew Haden for the United States.
21           THE COURT:  Good morning, Mr. Haden.
22       And Mr. Pilchak.
23       We are here for a status hearing, and, reviewing the case
24  files, it looks like we have a couple of motions to dismiss
25  that were filed on or about December 10, so we will need a

1   government response.  And we will take up the motion to dismiss
2   along with the motions *in limine* on January 7, 2022, at
3   2:30 p.m.
4        With that, what is, otherwise, the status of the case
5   regarding discovery and any other matter requiring the Court's
6   attention?
7             MR. PILCHAK:  Thank you, Your Honor.
8        The United States and I believe the parties jointly
9   requested this status conference for two reasons.  Number one,
10  as the Court just began to get into, to confirm the trial
11  readiness and a series of dates leading up to our trial.
12  January 25th is currently set in this case.
13       At the time that we requested the status, the *in limine*
14  filings had not all come in quite as expected.  The United
15  States had filed; the defense did not file motions.  So we just
16  wanted to confirm that everyone was sort of rowing in the same
17  direction towards the trial date in this case.  Since then,
18  there has been a response for Mr. Tilotta to the pretrial
19  motions, so that appears to be coming along.
20       But the, sort of, larger concern that the parties, I
21  think, jointly have is, obviously, we are living in the same
22  world as everyone else; we are looking at what's happening with
23  the new omicron variant.  We are considering what that's likely
24  to look like after the holidays, with a series of social events
25  and folks getting together and travel and whatnot.  And we,

1  frankly, wanted to just get a few minutes of the Court's time,
2  if we could, to discuss trial readiness in that vein as well.
3       Obviously, none of us has a crystal ball to understand
4  what is the world will look like in terms of juror
5  availability, witness good health, including out-of-town
6  witnesses.  I think the United States at this point has just
7  under 20 witnesses under subpoena for this trial, and we have
8  been working extremely hard to get all these witnesses ready.
9  And we stand by our estimate point that our case-in-chief in
10 this case would be about two weeks of trial time.  So it will
11 be a fair amount of time that the jurors -- the witnesses are
12 coming through the door and the parties are in the courtroom
13 together.
14      And so we wanted to confirm with the Court and the parties
15 that, at least at this point, as we all understand the evolving
16 courthouse procedures for the safety of everyone coming through
17 the courthouse, and what we all reasonably expect the future to
18 look like, that we believe that that is still a firm trial date
19 that we are all moving towards in advance knowledge.
20           THE COURT:  Yes.  And before I address that, anything
21 from the defense side relating to this?
22           MR. IREDALE:  Just this, Your Honor.  I have had a
23 chance to speak with counsel, and I think the concern is that
24 given the likelihood -- and I think the president actually is
25 going to address this issue tomorrow.  Given the likelihood

1   that there will be a renewed and arguably even larger wave of
2   COVID cases, probably throughout the country and in California
3   as well, the concern that counsel have -- and I think it's
4   almost a certainty -- is that that is going to happen and in
5   all likelihood the trial date will be postponed.
6        So I think that the government's effort was to try to ask
7   the Court for one of two things.  One, that the matter may be
8   put over to a later date in light of what is likely to be the
9   necessity to continue it in any event, so as to avoid
10  inconvenience to the witnesses and an intense amount of work
11  during this time period, which will probably, in all
12  likelihood, be for naught.
13       And we are also asking Your Honor to see into the future
14  and to, with absolute omniscience tell us exactly what is going
15  to happen so we will know that, if we have to spend the
16  holidays preparing for trial, it will not have been in vain.
17            THE COURT:  All right.  Well, I will do my best.
18       Here is how I see things.  We are in a far different
19  situation today than we were in October of 2020, when we had --
20  actually September, we had kind of returned to jury trials,
21  although we had the juries being selected in the jury assembly
22  area.  We now have vaccines.  We have the boosters.  We know
23  that, as to the omicron variant, it appears, from what we know,
24  to be far less severe in the symptoms that it creates in
25  someone who has contracted it.  It appears to be much less

1   likely to result in hospitalization.  But as we know, it is far
2   more contagious.  The estimate is something like 70 times more
3   contagious.
4       With respect to considerations such as avoiding having
5   jurors contract serious illness, I think health officials,
6   government officials are optimistic that we won't have the
7   waves of hospitalizations and deaths for those who have been
8   vaccinated.
9       And in real time, we have events unfolding regarding the
10  calculations of how many people are going to contract this.
11  And I guess, with respect to the contagiousness, with respect
12  to that it's 70 times greater than the delta variant or the
13  original, in the event that we had a juror contract it, then it
14  looks like we could end up in a problem where we would lose two
15  or three or four jurors, and that could make things for naught.
16      At the same time, this Court's calendar is just becoming
17  unbelievably compact.  I have this trial, and right after that,
18  I have another two- to three-week trial scheduled, which has
19  been around since 2018.  And then, in May, we have a
20  two-month-or-so trial, the Bychak case.  And these cases aren't
21  going to settle.  It's clear that they are not going to settle,
22  and we are going to have to go forward with them.
23      And it just creates such as impediment for the Court
24  because I, then, have this steady diet of criminal cases that
25  need to be tried.  As we all know, until last Friday -- even as

1    of today, we are six active judges out of a complement of 13.
2    Because God gave us an early Christmas gift, we will soon have
3    two new district court judges to join us.  But the number of
4    sentencings that this Court -- and speaking for all the active
5    judges -- have been dealing with, is unprecedented.
6        And not only do we have a large number of sentencings, but
7    80 percent of them are drug cases, which always take more time
8    to review, take more time to handle in court.  So we have been
9    dying.
10       And so, on one hand, I feel like, "Okay.  Well, if I can
11   kick the can down the street, that would maybe help in some
12   respect."  At the same time, these cases, the three-week,
13   two-week trials, the six-week trials, they are there, and at
14   some point, I am going to have to reckon with all of that.
15       So I am inclined right now to go forward with motions
16   *in limine* on the 7th, keeping in mind that, at noon today, we
17   will have our judges meeting, and we will make the decision as
18   to how we will proceed in January.  I currently have three
19   cases set for trial before your case.  One is scheduled for
20   January 4th, and then we will find out whether or not that gets
21   to go forward.  And then I have one on the 11th, and on the
22   18th.
23       So, the order that Judge Sabraw entered recently in terms
24   of returning to a number of the protocols for protections
25   against COVID expires, I believe, January 14 or 15.

1    At the same time, it is not hard to imagine that, as you
2 pointed out, Mr. Iredale, with the holidays, with going-aways
3 for folks, for any number of reasons, and keeping in mind that
4 because of the fact that we were pretty much sheltered in place
5 last year, it seems like the number of holiday parties kind of
6 grew exponentially.  And so, I think there's a decent chance
7 there will be a great increase.
8    Again, one would hope that, given the number of people in
9 California who have received the vaccine, who have received the
10 booster, that it will look nothing like it did last spring or
11 the fall of 2020, and that we will be able to manage this next
12 wave far more productively than we did the prior waves.
13    So, what I can tell you is, at this point, I do plan to
14 proceed with January 7, and it will be my intention to begin
15 trial on the 24th if at all possible.
16    To the extent that I would be required to select a jury in
17 my own courtroom with waves, limiting the number of jurors to
18 20 or so, even though that would make jury selection process
19 that much longer, that's fine.  I will do it.  I will do
20 anything possible to try to move this case forward.
21    Does that address your question?
22        MR. HADEN:  It does, Your Honor.  I can't quarrel
23 with anything the Court has said.  And I think that any efforts
24 to create things like that to try to increase the likelihood of
25 success, I guess -- what we are seeing, you know, is that this

1  case -- in the fall, we lost several juries in other courtrooms
2  because more people got sick than alternates on the case, so
3  there was for example a mistrial before Judge Bashant, because
4  she didn't want to go forward with only 11 jurors.  And those
5  were trials that were only two days.
6        So I think the concern for the parties is that this case
7  involves potentially two dozen witnesses, who are all going to
8  be coming in to prep, and then that amount of jurors.
9        What we all feel and sort of see in the data with how many
10 people are going to be interacting is that our ability to get
11 through it, despite everybody's best effort, is just
12 challenging.
13       So I think we just wanted to have this conversation with
14 the Court.  I don't disagree with anything the Court said, and
15 we really appreciate you helping us try to get this case done,
16 because, obviously, this is a case where we have not been able
17 to resolve with these remaining defendants, and it is in the
18 United States' interest to get justice done, whatever version
19 that looks like.
20       But to the extent that we are right on the heels of the
21 holiday season, as the Court noted, its feels this way to us,
22 that the universe is celebrating the holidays, and this omicron
23 wave -- I have two attorneys at my office who are boosted, most
24 vaccination, who are positive today, at the office.  And their
25 families are suffering with the holiday season coming up, and

1  they are canceling plans, and these things.
2       Is there something just slightly to the right of this wave
3  that we think, in January, in the Court's calendar?  I know you
4  mentioned several large trials.  Is there something that could
5  just get us a little bit further from the holiday season, that
6  maybe we could talk to the defense about and see if maybe they
7  were interested in that?
8            THE COURT:  Currently, I have March 8 civil trial, a
9  2018-2017 case, that I was hoping to go forward.  At the same
10 time, civil cases are going to be the first ones to be thrown
11 overboard, and so, at least a two-week time frame is there.
12      The week after that, I have a criminal case, but that's an
13 older case that's been around for a while.  To the extent that
14 it's necessary, I could find some way to bump that case.  So I
15 think the March 8th, March 15 week, March 22 week, I would
16 probably block that out if need be.
17           MR. PILCHAK:  Your Honor, could we have a moment to
18 talk to defense counsel?
19           THE COURT:  Here is the thing.  I will leave that
20 open, the March 8 through March 17 time frame.  And then, if
21 you could kind of whittle your case down a little bit, that
22 would be helpful as well.  But I can definitely get you those
23 two weeks and, if need be, I will get you the next week because
24 I will have to just reassign the case.
25      But what I was thinking is that there's a lot we don't

1  know.  But then what we will start seeing is that there's not
2  going to be even a trickling in of information.  I think we
3  will see a lot of data in the next couple of weeks as to how
4  the omicron variant has impacted our country, our communities,
5  our hospitals.
6      And we can go forward with the motions *in limine* on the
7  7th; and then, by then, I hope we will have a much clearer
8  picture on where things stand.
9      And if you jointly, before then, the 7th, say, "You know
10 what?  At this point, it doesn't make sense to continue with
11 this trial at the end of January; let's opt for March," then we
12 can do that.
13          MR. IREDALE:  Your Honor, may I ask that the latest
14 date we could start in March -- I do have a matter that may be
15 going to trial in the state court, but it is a civil matter,
16 and they are backed up, so it's problematic.  When they give
17 you a date, it's an aspiration as opposed to something -- so,
18 if I need to give up on that or to kick it over, I can do it;
19 but I was just wondering, what is the latest date in March the
20 Court could give us?
21          THE COURT:  I think that would be it because, as it
22 is, I would need to bump this criminal case that's set on the
23 22nd.
24          MR. PILCHAK:  Your Honor, I think everything the
25 Court is proposing makes sense.  I guess, just from the United

```
 1  States' perspective, we have witnesses that are scheduled to
 2  prep well before the in limine hearing.  So if we are going to
 3  have that level of interaction with witnesses and everything
 4  else, could we just have a moment to confer with the defense as
 5  to what the parties really would like to have happen today?
 6          THE COURT:  All right.
 7      (Counsel confer.)
 8          THE COURT:  Yes.
 9          MR. HADEN:  Your Honor, I think, having talked with
10  defense counsel, because of our understanding of omicron and
11  that this Court does have that potential availability, I think
12  it is the joint request of the parties, with motions pending,
13  that we avail ourselves of the Court's offer March 8 if the
14  Court would be willing to do that.  I think the certainty for
15  all the parties would be helpful.
16      I think we have also discussed leaving the in lim date on.
17  There's one motion that is very important to Mr. Anton that
18  could help provide clarity of the parties as to the path
19  forward.
20          THE COURT:  Okay.  So, then, we will confirm the
21  motions in limine hearing date of January 7, at 2:30 p.m.
22      Mr. Tilotta and Mr. Anton, you are again instructed to be
23  here for those proceedings.
24      Do you understand, Mr. Tilotta?
25          DEFENDANT TILOTTA:  Yes, Your Honor.
```

1           THE COURT:  And Mr. Anton?
2           DEFENDANT ANTON:  Yes, Your Honor.
3           THE COURT:  With respect to the trial date of
4    January 25, the Court will vacate the trial date, and then
5    reschedule trial for March 8, 2022, at 8:30 a.m.
6        And again, Mr. Tilotta and Mr. Anton, you are directed to
7    be here for that date and time and proceeding.
8        Do you understand, Mr. Tilotta?
9           DEFENDANT TILOTTA:  Yes, Your Honor.
10           THE COURT:  And Mr. Anton?
11           DEFENDANT ANTON:  Yes, Your Honor.
12           THE COURT:  And the Court will find, at this point,
13    excludable time between January 7 through March 8 under
14    3161(h)(7)(B)(i), given these developments as to the omicron
15    variant and the increasing numbers, the uncertainty as to how
16    it will affect this Court's ability to select a jury, hold
17    trial, given that at this time it is anticipated that the trial
18    will last at least two weeks.  Given that fact, it increases
19    the likelihood that a juror during the trial could contract one
20    of the variants, the original delta or omicron.
21        The Court observes that there are 20 witnesses that have
22    been subpoenaed.  A number of them have to make travel
23    arrangements to arrive here for both trial prep and for the
24    trial itself.
25        There are enough moving parts here that, at this time,

```
 1  keeping the trial on January 25th could very well result in
 2  expending lots of time and energy that will be for naught
 3  because we will not end up going forward with trial on
 4  January 25th.
 5       So, given these circumstances, the Court does find that
 6  there are an extraordinary set of conditions that make us
 7  unable to at this time, with any degree of certainty, any
 8  degree of assurances -- without that, we aren't in a position
 9  to maintain our trial date in January.
10       Is there anything else to address from the government?
11            MR. PILCHAK:  No, Your Honor.  Thank you.
12            THE COURT:  Anything else from the defense?
13            MR. IREDALE:  Just this, Your Honor.  I thought that
14  I had until the 24th to respond to the motions *in limine*, but I
15  just had a chance to recheck the schedule, and they were due,
16  actually, on Friday.  I have talked to the government.  They
17  have no objection.  I can get them all filed by Thursday.  May
18  I just ask Your Honor's permission for that variation from the
19  pretrial order?
20            THE COURT:  Yes.  No problem.
21            MR. WARREN:  Thank you.
22            THE COURT:  So that will be the 23rd.
23            MR. IREDALE:  Yes, sir.
24            MR. WARREN:  Your Honor, I had some illness last
25  week, non-COVID.  I filed a response to the government's *in*
```

1  *limine* motions.

2  I also have a few straightforward *in limine* motions that I
3  will file by Thursday as well, with the Court's permission.  I
4  don't think the government opposes.

5  THE COURT:  Is there an objection?

6  MR. PILCHAK:  If they are new motions, we would need
7  a chance to respond to that.  I am not sure what Mr. Warren was
8  envisioning for that.

9  MR. WARREN:  I will confer with the government.  They
10 are things like attorney participation in *voir dire*, and things
11 like that.

12 THE COURT:  Well, that will be granted at this point,
13 to the extent that you wish to make that orally.

14 MR. WARREN:  Okay.  Thank you.  I will confer with
15 the government, and I am sure they are not going to object to
16 me filing, but I will let them be the arbiter of that.

17 THE COURT:  Yes.

18 Then, with that, that will conclude today's proceedings.
19 Have a safe and happy holiday.

20 MR. PILCHAK:  Thank you very much, Your Honor.

21 MR. IREDALE:  Your Honor, may we wish the Court the
22 same.  And I think Your Honor has given to counsel, and many
23 witnesses, a happier holiday as well.  Thank you.

24 THE COURT:  Take care.

25 MS. JENKINS:  Thank you, Your Honor.

1          MR. HADEN:  Thank you, Your Honor.
2      (End of proceedings at 11:58 a.m.)
3                     -o0o-
4              C-E-R-T-I-F-I-C-A-T-I-O-N
5          I certify that the foregoing is a correct
transcript from the record of proceedings in the above-entitled
6  matter.  Dated:  April 14, 2023.
7                       /s/   Chari Bowery
                        _____
8                       Chari Bowery, CSR No. 9944, RPR, CRR