```
 1                    UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3
    UNITED STATES OF AMERICA,      .
 4                                 .
                 Plaintiff,        . No. 19-cr-4768-GPC
 5                                 .
                      v.           . August 19, 2022
 6                                 . 2:35 p.m.
    GIOVANNI VINCENZO TILOTTA,     .
 7                                 .
                 Defendant.        . San Diego, California
 8  . . . . . . . . . . . . . . .

 9

10            TRANSCRIPT OF STATUS/MOTION HEARING
            BEFORE THE HONORABLE GONZALO P. CURIEL
11                UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:
    For the Plaintiff:      United States Attorney's Office
14                          By: NICHOLAS PILCHAK, ESQ.
                                ANDREW HADEN, ESQ.
15                          880 Front Street, Room 6293
                            San Diego, California 92101
16
    For the Defendant       Warren & Burstein
17  Giovanni Tilotta:       By: JEREMY WARREN, ESQ.
                            501 West Broadway, Suite 240
18                          San Diego, California 92101

19

20

21

22  Court Reporter:         Chari Bowery, RPR, CRR
                            333 West Broadway, Suite 420
23                          San Diego, California 92101
                            chari_bowery@casd.uscourts.gov
24  Reported by Stenotype, Transcribed by Computer

25
```

```
 1            SAN DIEGO, CALIFORNIA; AUGUST 19, 2022; 2:35 P.M.
 2                              -o0o-
 3            THE CLERK:  Calling matter three on calendar,
 4   19-cr-4768, U.S. v. Giovanni Vincenzo Tilotta, for motion
 5   hearing.
 6            MR. WARREN:  Good afternoon, Your Honor.  Jeremy
 7   Warren, on behalf of Mr. Tilotta, present.
 8            THE DEFENDANT:  Good afternoon, Your Honor.
 9            THE COURT:  Good afternoon.
10            MR. PILCHAK:  Good afternoon, Your Honor.  Nick
11   Pilchak and Andrew Haden for the United States.
12            THE COURT:  Mr. Pilchak and Mr. Haden, good
13   afternoon.
14      We are here on a motion to dismiss and also status hearing
15   regarding trial.  Let's begin with the status hearing.  At this
16   point, we are ready and prepared to go to trial on -- I think
17   it's next week?
18            MR. PILCHAK:  A week from Tuesday.
19            THE COURT:  What day is it?
20            MR. PILCHAK:  It is the 30th.  We are very much ready
21   go to trial for the United States.  We have subpoenaed our
22   witnesses.  We have disclosed the exhibit and witness list to
23   the defense.  In fact, we were just in communication about some
24   of the exhibits earlier this afternoon.  We have produced
25   updated *Giglio* and Jencks materials and several very small
```

1  rounds of finishing up discovery, totaling less than 200 pages,
2  since our last hearing in April.  I also believe the parties
3  have agreed on four stipulations to streamline the length of
4  the trial, which should be helpful.  And of course, we have
5  fully briefed our motion to dismiss.
6         THE COURT:  Mr. Warren, are there any matters you
7  want to address at this time?
8         MR. WARREN:  No.  I am in general agreement with the
9  government.  I think most cases could settle; this one looks
10 like it will not, so yes.
11    One of the things the parties wanted to do is get a final
12 clarification because there's holiday in there, just the
13 scheduling.
14         THE COURT:  Yeah.  And initially, the view was this
15 would be about a two-week trial or three-week trial, but that
16 was before the codefendant pled.  So, at this point, I expect
17 that, given we only have one defendant now that's going to
18 trial, how long do you anticipate it will take for the
19 government's case-in-chief, Mr. Pilchak?
20         MR. PILCHAK:  Your Honor, for our case-in-chief we
21 would think six or seven days.
22         THE COURT:  That long?
23         MR. PILCHAK:  Your Honor, it is an aiding and
24 abetting and a conspiracy case.  So we dropped a defendant and
25 we dropped, I think, six witnesses from our witness list.  They

1    tended to be a little bit shorter.  And, of course, we will
2    make every effort to be as efficient as we can.  We may be able
3    to put the actual thing in a little faster than that, but we do
4    have a number of exhibits that we will seek to introduce.
5                THE COURT:  And as to the defense in this case, do
6    you have any estimate as to how long that might take?
7                MR. WARREN:  Your Honor, I would say two-days,
8    maximum.  Probably less.
9                THE COURT:  All right.  So, we will begin on the
10   30th.  We will go through September 2, Friday.  We will resume
11   on the 6th, the day after Labor Day.  And then we will go all
12   the way through the 9th.  My expectation is that this case will
13   be wrapped up by the 9th and not bleed into the following week.
14       Yes?
15               MR. HADEN:  Your Honor, I appreciate that.  I just
16   wanted to clarify, are there any days in there that are dark
17   for your calendars or other things?
18               THE COURT:  I am excluding everything.  We are just
19   going to have trial on this case.
20               MR. PILCHAK:  Thank you, Your Honor.
21               MR. HADEN:  Thank you, Your Honor.
22               THE COURT:  If I have a matter, I will move it so
23   that maybe I will do it at one o'clock and we won't start in
24   the afternoon until 1:30, or I will reset it at 8:30 and we
25   will start at 9:00.  But I intend to go without any days dark,

1  without anything more than an hour disturbing the progress of
2  our trial.
3          MR. WARREN:  We can come in on weekends, too, if the
4  Court wants.
5          THE COURT:  Well, I will hold you to that, and we
6  will come in on Labor Day.
7          MR. WARREN:  That's fine.  I will give you my wife's
8  phone number, Your Honor.
9          THE COURT:  And I will tell her that you volunteered,
10 and I was happy to say no, you should take the day off.
11     So, that's how we will proceed.
12     And then, as to this motion to dismiss, I have reviewed
13 the papers, which are deceptively short considering how long
14 *Bruen* reads and the weightiness of these issues.
15     But it appears to me that *Bruen* begins its analysis by
16 requiring the Court to precisely define a defendant's proposed
17 course of conduct.  And in *Bruen*, you had individuals that
18 wanted to purchase weapons, a handgun, which is a weapon in
19 common use for self-defense.
20     Let me ask, in this case, what is the proposed course of
21 conduct that your client has?
22          MR. WARREN:  Well, as Your Honor knows, he is a
23 federally licensed firearm dealer, an FFL.
24          THE COURT:  So he is not carrying handguns publicly
25 for self-defense; that's not the purpose.

1           MR. WARREN:  No.  And I think it's very clear.  I
2    don't disagree with the government.
3       I think the real issue is does the conduct of being the
4    gun dealer who is providing the firearms to the public for use
5    in home or public for personal safety, whether that's core
6    conduct covered by the Second Amendment.
7           THE COURT:  Do you have any case that suggests, even
8    remotely, that being the seller of a weapon would be within the
9    ambit of the Second Amendment, as a core issue or core value?
10          MR. WARREN:  No.  But *Bruen* is a brand-new case, so
11   this would be one of the first if not the first case that would
12   address that particular issue post *Bruen*.
13      But, no, I am not aware of any cases.  The Ninth Circuit
14   has the *Texeira* case -- which I think is T-E-X-E-I-R-A -- which
15   is post *Heller* but pre *Bruen*.
16          THE COURT:  But all of the cases, going back to
17   *Heller* and *McDonald*, look at precisely what is it that is at
18   stake.  And, in all of these cases, you had somebody wanted to
19   purchase a firearm, when someone wanted to bear a firearm,
20   which is contained in the Second Amendment; it talks about the
21   right to bear.
22      And so, here, it doesn't sound like your client comes even
23   close to that, other than, perhaps, enabling and facilitating.
24   But then there's a question of whether or not he has standing
25   to contest any of the regulations that might otherwise exist.

1          MR. WARREN:  I agree with, factually, what the Court
2    is saying.  My point would be that it's impossible to possess a
3    firearm without complying with this regulatory scheme that's
4    extremely complicated and -- I mean, looking at the allegations
5    in this particular case, it goes to whether you -- what date
6    you signed a form, and these are things that go right to the
7    ability of someone to possess a firearm.
8          THE COURT:  You don't disagree that seeking to know
9    someone's name, their address, their birthdate, are precisely
10   the kinds of things that are needed to determine whether or not
11   someone is a felon, whether someone is mentally ill, and
12   whether or not they are clearly individuals that the Supreme
13   Court has recognized are not entitled to possess a weapon.
14         MR. WARREN:  Sure.  I mean, there can be some
15   regulatory scheme that can pass constitutional muster, and my
16   argument is this one isn't.  It's way too -- for example, one
17   of the counts that he is charged with breaking is delivering a
18   firearm to a customer at a place that would be in violation of
19   California law because it's not -- it is a business, a police
20   department, but not the buyer's home or business.
21      These are things that affect -- that don't go to the type
22   of regulatory scheme that Your Honor is talking about, which
23   are basics, like, "Are you a felon or not a felon?"  That, to
24   would me would pass constitutional muster.
25         But all the additional layers of -- unfortunately, we are

1  going to hear about it for two weeks.  And you are going to
2  become an expert, as a lot of people are, about the dealer
3  record of sale system, the ATF Form 4473, the CFRs that go on
4  and on about how to properly do that.
5     And I am saying that, in total, that the way it's set up
6  and the crimes that are charged based on that are in violation
7  of the Second Amendment because they severely impact an ability
8  of an average citizen to be able to have a firearm to protect
9  themselves or their family.
10          THE COURT:  Well, but not your client.  We are not
11 talking about his right to bear arms.  We are talking about his
12 right to sell arms to other individuals that might want to
13 exercise their Second Amendment right.
14          MR. WARREN:  In the charges here, of course.  Yeah.
15          THE COURT:  Yeah.
16     So, I mean, as a threshold matter, we have to determine,
17 does the Second Amendment apply?
18     And given the proposed course of conduct that you are
19 referencing, which looks to me like is the right to sell and
20 transfer firearms versus the right to bear arms for
21 self-protection, there's nothing in the text of the Second
22 Amendment that covers the proposed course of conduct.
23          MR. WARREN:  Well, that's the government's argument,
24 and I would just say that the government is relying on the
25 dicta in *Heller* that says, "Nothing about our Second Amendment

```
 1   analysis affects Congress' ability to regulate the sale of
 2   firearms."  But they don't agree --
 3           THE COURT:  Which part is dicta from the government's
 4   argument?
 5           MR. WARREN:  From Heller, the language that says
 6   nothing in the Heller opinion affects the ability to regulate
 7   the commercial transactions involving firearms.  And that's
 8   what I think the core of the argument is that --
 9           THE COURT:  It was dicta because, in Heller, you
10   didn't have someone who, in fact, was a commercial --
11           MR. WARREN:  Right.  Heller involved the Washington
12   D.C.'s restriction on possession of firearms.
13           THE COURT:  To that extent, it wasn't necessary to
14   decide the case.  But we do have it from the Supreme Court that
15   they have this view regarding commercial activities being
16   separate and apart.  And keeping in mind that part of what the
17   Court is required to do is to examine the plain text of the
18   Second Amendment.
19           MR. WARREN:  I understand.
20           THE COURT:  And there's nothing in the Second
21   Amendment that covers the sale or the transfer of firearms.
22   Would you agree with that?
23           MR. WARREN:  Well, not totally because I think
24   that -- yes, if you just look at the words themselves.  But I
25   mean, "a well-regulated militia" -- and I am not going to try
```

```
 1  to quote the Second Amendment; I haven't memorized it -- but
 2  there should be no regulations that restrict the right to bear
 3  arms, right?  So, you can't bear arms without being able to
 4  legally bear arms.
 5          THE COURT:  So the Second Amendment reads, "A
 6  well-regulated militia being necessary to the security of a
 7  free state, the right of the people to keep and bear arms shall
 8  not be infringed."
 9       And so, your argument would seem to be that --
10          MR. WARREN:  It is an infringement.
11          THE COURT:  -- even regulating firearms, to the
12  extent that you find those regulations to be onerous, infringes
13  the people's right to keep and bear arms?
14          MR. WARREN:  Correct.
15          THE COURT:  Why should your client be the one that's
16  entitled to bring that Second Amendment claim versus
17  individuals who are impacted by these regulations that they
18  have claim are Byzantine or overly restrictive or problematic?
19  Why does your client have standing?
20          MR. WARREN:  Well, he is a criminal defendant.  He is
21  charged with a violation of law.
22          THE COURT:  But standing under the Second Amendment
23  versus standing to file a motion.  Of course, he could file
24  motions until the cows come home; but, ultimately, as to the
25  standing to raise this precise issue, about these onerous
```

1 regulations.

2          MR. WARREN:  I think, ultimately, the argument is
3 that the statutes are unconstitutional because they violate the
4 Second Amendment.  And he is charged with violating a statute
5 that I believe is unconstitutional because of the restriction
6 that infringes based on the Second Amendment, upon the public,
7 his customers, and his ability to run his business.

8          THE COURT:  All right.  Let me hear from the
9 government as to that last portion of the argument.

10          MR. HADEN:  Your Honor, it appears in the Court's
11 questions that we are exactly there.

12     So, the Court is required, under *Bruen*, to look at the
13 plain text.  And what Mr. Warren is sort of glossing over is
14 there's *Heller*, which didn't relate to sales; but then the
15 Ninth Circuit looked at sales in *Texeira* and found the plain
16 text of the Second Amendment didn't cover this type of conduct.

17     And then we have *Bruen*, who reaffirmed that principle.  We
18 have to look to the plain text.  And specifically in *Bruen*, it
19 talked about people who wanted to personally keep and bear
20 handguns in New York City for their own personal self-defense,
21 both at home and in public.

22     And there's just nothing about -- as conceded, there's
23 nothing about Mr. Tilotta's conduct in this case that
24 implicates the plain text of the Second Amendment.  He wasn't
25 trying to keep or bear arms for his own self-defense.  He

1  applied both to California and to ATF to be a licensed dealer
2  and all of the charges he is charged with are related to these
3  commercial sales and his willingness and his conspiratorial
4  behavior to accept false statements in those transactions.
5       So, it's just not implicated by the plain text.  He has
6  the remedies of other motions, of course.  But as far as
7  standing under the Second Amendment, he doesn't satisfy the
8  burden that's been laid out by *Bruen* and specifically discussed
9  in the concurrence, the multiple concurring opinions, so the
10 analysis can and should shop there.
11           THE COURT:  So, Mr. Warren just made the argument
12 that he's being prosecuted based upon laws that are themselves
13 unconstitutional under *Heller*, under *Bruen*, and that that vests
14 him with standing to challenge these laws under this motion.
15 Do you have a response to that?
16           MR. HADEN:  Well, that argument has been rejected
17 plainly by the Ninth Circuit.
18           THE COURT:  In *Texeira*?
19           MR. HADEN:  In *Texeira*, yes, Your Honor.
20      The *Bruen* court itself explains it is not related.  You
21 have to do that plain-text analysis.  Mr. Warren's motion
22 didn't attempt it because Mr. Tilotta's conduct doesn't land on
23 all fours.  Mr. Tilotta wasn't charged with anything remotely
24 similar.
25           And there's also citations in our briefing as well that a

1  constitutional challenge, in order to assert that as it relates
2  to some of the statutes -- we are talking about false
3  statements.  You don't get to lie and then say that what you
4  were charged with doing -- you are allowed to lie as a basis
5  for your constitutional challenge.
6             THE COURT:  Do you have a response to that portion of
7  the government's argument?
8             MR. WARREN:  Your Honor, I took a look at those
9  cases, and I know that there's some language they plucked out.
10 But I don't think that the principle applies that you can be
11 convicted of an unconstitutional law.
12     I think in certain contexts, and the Supreme Court case
13 they cited had to do with some labor regulations and whatnot,
14 but they were charged under a conspiracy statute and they
15 weren't challenging the constitutionality of the statute they
16 were charged under.  And I don't think it applies here.
17     I could do further briefing if the Court really wanted it.
18 We are getting close to trial.  But that's my response.
19            MR. HADEN:  It is a secondary argument, Your Honor.
20     The main thrust is that the conduct here, all of the
21 charges, all of the things this Court is going to hear about at
22 trial, are related to Mr. Tilotta's conduct as a commercial
23 arms dealer.
24     None of the firearms were for his own possession to keep
25 or bear as related to is own self-defense.

1          THE COURT:  All right.  I am prepared to deny the
2   motion to suppress -- I am sorry -- to dismiss.  And I am going
3   to see if we can prepare an order in the next couple of days.
4   If work doesn't allow me to do so, at this point, you are aware
5   that the Court is going to deny the motion.
6       I am going to conclude that the defense has not, one, even
7   established what the proposed course of conduct at issue is.
8       To the extent that the proposed course of conduct is the
9   commercial sale of firearms, there's no indication within the
10  plain text of the Second Amendment that such proposed course of
11  conduct -- commercially sell and transfer firearms -- is
12  covered by the Second Amendment, which is otherwise focused on
13  an individual's right to possess and carry weapons in the case
14  of confrontation.
15      So, we will try and get something more fully developed in
16  the next week or so, but at least, at this time, the Court is
17  prepared to deny the motion.
18      And we will proceed with trial beginning August 30, at
19  8:30 a.m.
20      Mr. Tilotta, you are directed to return to this courtroom
21  on August 30, at 8:30 a.m.  Do you understand?
22          THE DEFENDANT:  Yes, Your Honor.
23          THE COURT:  Anything else?
24          MR. WARREN:  Well, Your Honor, something -- can I
25  have just one second with them?

```
 1                THE COURT:  Yes.
 2        (Counsel confer.)
 3                MR. WARREN:  A couple of things.  One is to put on
 4   the record the agreement of the parties the government will
 5   provide us their witnesses, anticipated witnesses for the next
 6   two days.
 7                MR. PILCHAK:  And I didn't think to ask Mr. Warren
 8   for this, but can we get some sort of reciprocal commitment
 9   from the defense when it's time for the defense case?
10                MR. WARREN:  Yes.
11                MR. PILCHAK:  Thank you.
12                MR. WARREN:  And then the parties thought it might be
13   helpful, right before trial -- not an *in limine* hearing, but
14   perhaps a status hearing the day before, just if there are any
15   issues so not to take up any jury time on the 30th, if the
16   Court has time on the 29th.  And I can even waive Mr. Tilotta's
17   presence if the Court would accept that.
18                THE COURT:  I can meet with you at 4:00 p.m. on
19   August 29.
20                MR. WARREN:  And if there's really nothing to do, we
21   will alert the Court and take it off calendar.
22                THE COURT:  All right.
23                MR. PILCHAK:  Just a few minor housekeeping things
24   for us.
25         The Court previously entered an order excluding testifying
```

1  witnesses except for the government's case agents.  Is that
2  still acceptable?
3          THE COURT:  And the defense investigator.
4          MR. PILCHAK:  Yes, Your Honor.
5          THE COURT:  Yes.
6          MR. PILCHAK:  Thank you.
7          MR. WARREN:  Could the government just tell us which
8  case agents?
9          MR. PILCHAK:  Yes.  That would be Special Agent Matt
10 Beals, of the ATF; and Christina Hokenson, of the FBI.
11     We would also ask for permission to recall Agent Beals
12 during our case-in-chief if possible, not to duplicate
13 testimony but to facilitate orderly presentation of the
14 evidence to the jury.
15         THE COURT:  You mean you would call Agent Beals at
16 one point in your presentation, and then conclude with her, and
17 then call her a day or two or three days later?
18         MR. PILCHAK:  Potentially, yes.  If the testimony
19 relates to something the jury just heard about, a particular
20 transaction from a particular witness, I think it would assist
21 their comprehension to hear from the case agent to put in a
22 record or two thereafter.
23         THE COURT:  I will let you make that request at
24 trial.
25         MR. PILCHAK:  Okay.

```
 1                THE COURT:  We will have a better idea of what we
 2    have in the record and what she is needed for.
 3                MR. PILCHAK:  Thank you, Your Honor.
 4         Last -- or second to last, it is my understanding there
 5    are no special procedures about masking or court layout right
 6    now in Your Honor's court; is that correct?
 7                THE COURT:  I have not.  Although, as we have seen,
 8    at least with respect to cases with 12 defense lawyers, it
 9    didn't work out that well.  We ended up with five defense
10    lawyers -- and recognizing that with defense lawyers, they
11    would have been meeting and conferring outside the courtroom
12    without masks, I am sure, so it wouldn't have mattered there.
13         But, here, I would consider, for the common good, having
14    the jury wear masks during the trial.  I haven't done it
15    recently for shorter trials, because if it is a two-day trial,
16    one, it's less likely that anyone would contract COVID and
17    develop any symptoms to even know they have COVID; and two, to
18    the extent that we end up having a mistrial because of
19    insufficient numbers of jurors, it is not that onerous to retry
20    a day-and-a-half trial.
21                MR. PILCHAK:  Right.
22                THE COURT:  But it would be much more onerous to
23    retry an eight-day trial.
24         With that in mind, I would be more willing and prepared to
25    have our jury wear masks.  Does that answer your question?
```

```
 1            MR. PILCHAK:  I think it does, Your Honor, and
 2   perhaps we will revisit that on Monday.
 3            THE COURT:  And I would make an exception, and it
 4   would be for the attorneys who are examining witnesses or
 5   speaking to the jury, or witnesses.  And I am not going to
 6   require non-vaccinated witnesses to wear a clear mask.
 7            MR. PILCHAK:  Thank you, Your Honor.
 8       And then last, on a similar note, how many alternates does
 9   the Court know it may seek for a trial estimated at two weeks?
10            THE COURT:  At least three and possibly four.
11       That table there is set up for one juror, if not two.  And
12   in the six-week trial that we had previously scheduled, we had
13   that seat also available for a juror.
14       So I will have at least 13 or 14.
15            MR. PILCHAK:  Very good.  Thank you, Your Honor.
16            THE COURT:  Anything else?
17            MR. WARREN:  Just a very minor thing.
18            THE COURT:  I will have at least the 12 jurors, and
19   at least three or four additional.
20            MR. PILCHAK:  Thank you.
21            MR. WARREN:  Your Honor, just from having recently
22   done a trial in this courtroom and time is very precious, I
23   don't know if the Court has available a conference room or area
24   that the defense could use.  It's unfortunate, every other
25   courthouse that I have been in around the country, the federal
```

1  has a lawyer's room.  I know there's a magistrate judge next
2  door, who I think doesn't use the jury deliberation room, and
3  we could check with them if they would be willing to allow us
4  to use it.  We probably wouldn't leave the building.
5          THE COURT:  I am not sure if they have room in the
6  back of the courtroom where they have externs, when they have
7  externs, that would be available.  We can inquire of
8  Judge Berg.
9          MR. WARREN:  I know how to reach him.
10         THE COURT:  I have heard.
11         MR. WARREN:  I will check with the Court.  Thank you.
12         THE COURT:  That will be all.
13         MR. PILCHAK:  Thank you, Your Honor.
14     (End of proceedings at 3:01 p.m.)
15                          -o0o-
16                 C-E-R-T-I-F-I-C-A-T-I-O-N
17         I certify that the foregoing is a correct
   transcript from the record of proceedings in the above-entitled
18 matter.  Dated:  May 1, 2023.
19                            /s/   Chari Bowery
                              _____
20                            Chari Bowery, CSR No. 9944, RPR, CRR
21
22
23
24
25